OPINION OF THE COURT
John G. Connor, J.
This matter involves four distinct motions as follows: (1) A motion of the defendant and third-party plaintiff Dutchess Bank and Trust Company (Dutchess) for summary *513 judgment upon its third-party complaint; (2) A motion by the defendant and third-party plaintiff Kingston Trust Co. (Kingston) for summary judgment upon its third-party complaint; (3) A cross motion by third-party defendant Rondout National Bank (Rondout) seeking dismissal of the third-party complaint against it; and, finally, (4) A cross motion by third-party defendant Bankers Trust Company of Hudson Valley, N. A. (Bankers) seeking dismissal of the third-party complaint against it. It is noteworthy that the plaintiffs do not seek any relief upon these motions, the same being entirely between the depository banks and the drawee banks. The court will undertake to decide the motions separately. In so deciding, the court will not deal with each individual check and exhibit submitted separately since the decision will be sufficiently specific as to make the application to each check obvious.
FACTUAL BACKGROUND
The factual pattern relied upon by the parties is uniformly applicable; the basic facts are not in dispute.
It is apparently conceded by all of the parties that the present lawsuit arises from a scheme perpetrated by one Caliendo who, during the period of time applicable to the instant proceedings was the plaintiffs’ accountant. This scheme had two distinct phases. First, pursuant to this scheme Caliendo would prepare tax returns for plaintiffs and would tender them for execution to plaintiffs. In so doing, he would request checks payable to various taxing authorities which checks were to be transmitted with the returns to the taxing authorities. In fact, all parties agree that the checks in fact drawn to the taxing authorities as named payee were in fact delivered to Caliendo to be forwarded with the returns. These checks will be referred to as set No. 1. Second, pursuant to this scheme, Caliendo would advise plaintiffs to draw certain checks payable to one of plaintiffs, as named payee, in order to avoid “excess profit tax”. The purpose of these checks was apparently to show payments out of the business of plaintiffs as to reduce business profits. Caliendo also obtained possession of these checks. The efficacy of this portion of the scheme is not before the court. These checks will be referred to as set No. 2.
*514 In the course of dealing with these checks, it appears conceded, Caliendo deposited them in an account in his name alone in either third-party defendant Rondout or third-party defendant Bankers. The present location of the proceeds is not revealed by the papers and the court can only assume the worst. None of the checks were indorsed in the name of the named payee. For the most part, the checks bore restrictions such as “tax account”, “Special Account”, or for “deposit only”. After deposit of the checks (both sets Nos. 1 and 2) in either third-party defendant Rondout or third-party defendant bankers, the checks were forwarded to the drawee banks, either third-party plaintiff Dutchess or third-party plaintiff Kingston. The indorsement by the depository banks contained the notation “PEG” (prior endorsement guaranteed). The drawee banks, third-party plaintiff Dutchess and third-party plaintiff Kingston, honored the checks and transmitted the funds to the depository banks, i.e., either third-party defendant Rondout or third-party defendant Bankers. This completes the cycle of facts pertinent to this decision.
THEORIES OF PARTIES
The third-party plaintiff Dutchess and third-party plaintiff Kingston seek recovery from third-party defendant Rondout and third-party defendant Bankers on a variety of theories. These include: (1) negligence, and (2) express guarantee of indorsement. Third-party defendants defend principally upon a theory of negligence. As well, third-party defendant Rondout urges a defense of fictitious payee.
ANALYSIS OF THE APPLICABLE LAW
Since the Uniform Commercial Code was added by chapter 553 of the Laws of 1962 (eff Sept. 27,1964) the course of dealing with commercial paper of the type here involved has been controlled by statute. The case law which has evolved has been true to the spirit and intent of the statute and the statutory framework is sufficient for the purpose at hand. Thus, the precise questions of negligence are not treated.
As to each check, whether set No. 1 or set No. 2, the check was drawn by plaintiffs to the order of a named *515 payee. In the case of set No. 1, the named payee was a taxing authority. In the case of set No. 2, the named payee was a plaintiff. In either case, Caliendo was not the named payee.
There is no proof in the record before the court that plaintiffs ever intended Caliendo to obtain the proceeds of the checks or to obtain title to the checks. In the case of set No. 1, the role of Caliendo was merely an agent to deliver the check to the nearest mailbox. In the case of set No. 2, the record is less clear, but it is sufficiently clear to convince the court that there was no intention for Caliendo to exercise dominion or control over either the instruments or their proceeds.
There is no implication that Caliendo was authorized to indorse any check on behalf of a taxing authority (set No. 1) or on behalf of the plaintiffs (set No. 2).
Effect of Indorsement: The indorsements by Caliendo are of no effect. Subdivision (1) of section 3-404 of the Uniform Commercial Code provides: “Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it” (emphasis added). There is no proof in the record that indorsement by Caliendo was ratified either by the plaintiffs as to set No. 2 or by the taxing authorities as to set No. 1. The court concludes that the indorsements are forgeries and wholly inoperative.
fictitious payee not applicable: The third-party defendant Rondout urges to this court that the instant case falls within the embrace of section 3-405 of the Uniform Commercial Code which makes effective an indorsement in the imposter case. In pertinent part it provides:
“(1) An indorsement by any person in the name of a named payee is effective if * * *
“(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or “(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.” (Emphasis added.)
The attempted application of paragraphs (b) and (c) is of no effect. An examination of the record indicates that there *516 appears to be no indorsement of the checks either in set No. 1 or set No. 2 in the name of the named payee. (See Kosic v Marine Midland Bank, 76 AD2d 89.) Thus, the conditionals (b) and (c) never come into play as there are no indorsements in the name of the named payee. The argument fails at the threshold.
liabilities during collection: With the preliminaries resolved, the analysis now proceeds to the liabilities flowing from the negotiation of the check during the collection process. These liabilities are as follows:
(1) Express Guarantee: As the collection banks specifically guaranteed the instruments and the indorsements involved, the specific guarantees were breached by the fact that indorsement to the depository bank was wholly ineffective.
(2) Collection Warranties: Pursuant to section 4-207 (subd [1], pars [a], [b]) of the Uniform Commercial Code, the depositing banks, third-party defendant Rondout and third-party defendant Bankers, warranted to third-party plaintiff Dutchess and to third-party plaintiff Kingston that:
(a) he had good title to the item or is authorized to obtain payment or acceptance on behalf of one who has good title and the transfer is otherwise rightful; and
(b) all signatures are genuine and authorized. Each of these warranties was breached by the third-party defendant Rondout and by the third-party defendant Bankers by the transfer of the checks for payment to third-party plaintiff Dutchess and to third-party plaintiff Kingston. Since the third-party plaintiff Dutchess and the third-party plaintiff Kingston were not depository banks, they were given no notice by the indorsement chain prior to that of third-party defendant Rondout or of third-party defendant Bankers. (Uniform Commercial Code, § 4-205, subd [2]; see Birmingham Trust Nat. Bank v Central Bank & Trust Co., 12 UCC Rep Serv 468.) Thus, the third-party plaintiff Dutchess and the third-party plaintiff Kingston may sue for indemnity for breach of those warranties. (Colonna & Co. v Citibank, 105 Misc 2d 750.)
(3) Conversion: Payment over a forged indorsement is conversion. (Uniform Commercial Code, § 3-419.) Both the *517 third-party defendants are liable to the respective third-party plaintiffs in the following manner: subdivision (1) of section 3-419 imposes a liability for conversion upon anyone who pays over a forged indorsement. Subdivision (3) of section 3-419 relieves a depository or collecting bank from liability if they have dealt with the instrument in accordance with reasonable commercial standards. This court finds as a matter of law that where, as here, a check is drawn to a named payee and is either not indorsed at all or is indorsed in the name of a stranger to the check or is indorsed merely “for deposit” “special account” or “tax account” without further indorsement on the behalf (forged or otherwise) of the named payee that deposit to an account other than the account of the named payee violates any reasonable commercial standard. It is the duty of the first taker under a restrictive indorsement to examine the chain of indorsements (see Birmingham Trust Nat. Bank v Central Bank & Trust Co., supra). This is particularly true where subdivision (2) of section 4-205 of the Uniform Commercial Code indicates that there is no notice to succeeding banks in the collection process of defective indorsements. The policy expressed by this statutory proscription is that once the document has entered the collection process, the process is to be swift (cf. Uniform Commercial Code, § 4-202). To hold otherwise would permit chaos.
Underpinning & Foundation Constructors v Chase Manhattan Bank (46 NY2d 459) is not to the contrary. There the precise issue of the effect of the restrictive indorsements was seen as imposing an additional duty over and above the duty to deposit the checks in the account of the named payee. If anything, Underpinning stands for the proposition that the existence of the restrictive indorsement requires the depository bank to identify the terminal point of the indorsement chain and to deal with that effectively. Here, the terminal point was the named payee. Further, in Underpinning the forgeries were in the name of the named payee, which is not the case here. Thus, section 3-405 was at least arguable in Underpinning while it is not here.
In this vein, the argument of third-party defendant Rondout that it properly dealt with the instruments be *518 cause it did follow the restrictive indorsement by depositing the same in Caliendo’s account must be rejected. It is clear from an examination of the instruments that they had never been negotiated away from the named payee. There was no other indorsement and “order” paper may be negotiated only by indorsement. (Uniform Commercial Code, § 3-302, subd [1].) Even the most cursory inspection of the instruments would reveal that they were not properly indorsed by the payee. Although the court is not inclined to pursue the negligence theories advanced by the parties, the principles enunciated in Birmingham (12 UCC Rep Serv 468, supra) would convince this court to find negligence on the part of the third-party defendant Rondout and the third-party defendant Bankers in any event.
CONCLUSIONS
(1) Based upon the above reasoning, the third-party plaintiff Dutchess is granted summary judgment against third-party defendant Rondout granting to the third-party plaintiff Dutchess indemnity for any and all sums which the third-party plaintiff Dutchess may become obligated to pay to plaintiffs as a result of the checks fraudulently deposited by Caliendo in his account with the third-party defendant Rondout.
(2) Based upon the above reasoning, the third-party plaintiff Kingston is granted summary judgment against third-party defendant Bankers granting to the third-party plaintiff Kingston indemnity for any and all sums which the third-party plaintiff Kingston may become obligated to pay to plaintiffs as a result of the checks fraudulently deposited by Caliendo in his account with the third-party defendant Bankers.
(3) The application of the third-party defendant Rondout for dismissal of the third-party complaint is denied.
(4) The application of the third-party defendant Bankers for dismissal of the third-party complaint is denied.
(5) In the event that plaintiff prevails, the third-party plaintiff may move at the foot of the judgment to schedule *519 an inquest to determine the exact amount for which each collecting bank is liable to each respective drawee bank.