**LAKELAND PIPE & SUPPLY, INC. a/k/a Lakeland Enterprises Inc., Appellant,**

v.

**FIRST NATIONAL BANK OF BELLAIRE, Appellee.**

No. B14–92–01307–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 16, 1994.

Rehearing Overruled July 21, 1994.

Paul D. Clote, Houston, for appellant.

Kenneth M. Slack, Bellaire, Louis H. Salinas, Jr., Butler & Binion, Houston, for appellee.

Before SEARS, LEE and JUNELL (Sitting by Designation), JJ.

## OPINION

LEE, Justice.

Lakeland Pipe and Supply, Inc. (Pipe & Supply) appeals a take nothing judgement entered on its suit for conversion, negligence, and breach of contract. Pipe & Supply sued First National Bank of Bellaire, N.A. (Bellaire Bank)[1] to recover $40,214.97 lost as a result of Bellaire Bank depositing the proceeds from two checks payable to Pipe & Supply, into the account of Lakeland Oilfield Supply, Inc. We reverse and render.

Pipe & Supply is in the business of buying and selling oilfield pipe, with offices in Dumas, Arkansas and Houston, Texas. In January 1989, Pipe & Supply contracted with Stillwater Geothermal I (Stillwater) to provide several thousand feet of pipe. Stillwater operated out of Nevada. Jim Sutherland, an employee, an officer, and a director of Pipe & Supply, negotiated the sale. Sutherland operated Pipe & Supply's Houston office. As payment for the pipe, Stillwater issued two checks payable to Pipe & Supply. The first check, number 01842, was issued on February 13, 1989 in the amount of $18,566.97. The second check, number 02094, was issued April 6, 1989 in the amount of $21,648.00. It was the practice of Pipe & Supply to have all checks sent to the Dumas office, which was responsible for payroll, tax, and other accounting matters. However, the Stillwater checks were sent to Houston after Sutherland altered the return address on the invoices sent to Stillwater.

After receiving the first check, Sutherland endorsed it and presented it for deposit at Bellaire Bank. The endorsements on the check read "Lakeland Oilfield Supply," "Lakeland Pipe and Supply," and "Jim Suth-

---

1. First National Bank of Bellaire, N.A., is located in Houston, Texas.

erland" in that order.[2] The bank, without determining whether Sutherland was authorized to endorse checks on behalf of Pipe & Supply, or making any inquiries of the secretary of state in reference thereto, cashed the check. Sutherland in turn, used the proceeds from that check to open a new account in the name of Lakeland Oilfield Supply, Inc. Sutherland was an officer and director of Oilfield Supply. Sutherland operated Oilfield Supply from the same office as Pipe & Supply. According to one bank officer, the bank allowed the deposit only after it reviewed the articles of incorporation of Lakeland Oilfield Supply, Inc., and found that Sutherland was a director and that both companies listed the same business address.

Sutherland received the second check over a month later. Again, he endorsed the check and presented it for deposit at Bellaire Bank in the Lakeland Oilfield Supply, Inc. account. The bank accepted the check on Sutherland's endorsement, again without inquiring whether Sutherland was authorized to endorse checks on behalf of Pipe & Supply. The second check had endorsements by "Lakeland Oilfield Supply" and "Jim Sutherland" in that order. Check number 02094 did not contain any endorsement purporting to be on behalf of Lakeland Pipe and Supply.

Pipe & Supply never received any of the proceeds from the two checks sent by Stillwater. Pipe & Supply brought suit against Bellaire Bank, Sutherland, and Lakeland Oilfield Supply, Inc., to recover the $40,214.97 on grounds of conversion, breach of contract, negligence, and breach of fiduciary duty. Pipe & Supply received a judgment against Sutherland and Oilfield Supply, but was unable to collect on the judgment. In an effort to recover their loss, Pipe & Supply appeals the take nothing judgment granted in favor of Bellaire Bank.

■ Appellant raises eleven points of error. In its first point of error, appellant contends there is no evidence to support the trial court's finding that Bellaire Bank acted in good faith and in accordance with reasonable commercial standards when it deposited the proceeds of two checks payable to Lake-

land Pipe and Supply into the account of Lakeland Oilfield Supply, Inc. Appellant argues to the contrary, that it is commercially unreasonable to cash checks, having no authorized endorsement, and giving the proceeds to some one other than the named payee. Appellant concludes that the bank's actions amounted to conversion. The TEX. BUS. & COM.CODE ANN. (Vernon 1968) provides that an instrument is converted when paid on a forged endorsement. This is so even though made in good faith. *See Continental State Bank v. Miles Gen. Contractors,* 661 S.W.2d 770, 773 (Tex.App.—Fort Worth 1983, no writ).

Appellant contends that the bank's commercial unreasonableness was furthered by the fact that Pipe & Supply was not a customer of the bank, and had no prior dealings with the bank. Moreover, Sutherland was a prior bank customer, and bank records showed he was regarded as an unfavorable customer because of numerous overdrafts and non-sufficient funds on his personal account.

Appellant also argues that if the bank would have only inquired as to Sutherland's authority with Pipe & Supply, as would be commercially reasonable under the circumstances, it would have found that Sutherland was not authorized to endorse checks in the name of Lakeland Pipe & Supply. Nor was he authorized to deposit Pipe & Supply checks into any Texas bank other than the company account maintained at San Jacinto Savings.

■ It is elemental, that if a bank pays a check to one other than the actual payee or to his order, or is mistaken as to the payee's identity or is paid upon a forged endorsement of payee, the bank is responsible. *Continental State Bank v. Miles Gen. Contractors,* 661 S.W.2d 770, 773 (Tex.App.—Fort Worth 1983, no writ); *Morris Plan Bank of Fort Worth v. Continental Nat'l Bank of Fort Worth,* 155 S.W.2d 407, 409 (Tex.Civ. App.—Fort Worth 1941, no writ); *See also Heusinger Hardware Co. v. Frost Nat'l Bank,* 364 S.W.2d 851 (Tex.Civ.App.—Eastland 1963, no writ). Commercial expediency

---

2. Sutherland made all three endorsements.

and the U.C.C. place the burden on the first bank in the collection chain to insure that endorsements are authentic as it is this bank which is in the best position to make this discovery. *Ames v. Great Southern Bank,* 672 S.W.2d 447, 450 (Tex.1984).

Bellaire Bank, however, contends that Pipe & Supply, and not the bank was in the best position to discover the forged endorsements. DeWayne Varnadore, a director of Pipe & Supply, testified that there has never been any relationship between Lakeland Pipe & Supply and Lakeland Oilfield Supply. Varnadore stated that he first heard of Oilfield Supply when he received a telephone call from a representative of Stillwater informing him that the check sent to pay for pipe supplied by Lakeland Pipe & Supply had been endorsed by a company called Lakeland Oilfield Supply, Inc. Varnadore then contacted the secretary of state's office and learned that Lakeland Oilfield Supply had been incorporated by Jim Sutherland.

By deposition testimony, Charles R. Vickery, Chairman of the Board of Bellaire Bank testified that notwithstanding the fact that both checks were payable on their face to Lakeland Pipe & Supply or Lakeland Pipe & Supply Company, they were deposited at Bellaire Bank in an account in the name of Lakeland Oilfield Supply, Inc. Vickery also stated that it is not the bank's responsibility to determine whether or not the payee in the check was the person making the deposit or the person making the endorsement.

■ Craig Wooten, executive vice-president of Bellaire Bank admitted that there is a big difference between Lakeland Pipe & Supply, Inc., and Lakeland Oilfield Supply, Inc. He further admitted that Lakeland Oilfield Supply, Inc. was a bank customer and Lakeland Pipe & Supply, Inc. was not. He also testified that notwithstanding the fact that both checks were payable on their face to Lakeland Pipe & Supply or Lakeland Pipe & Supply Company, they were endorsed by Lakeland Oilfield Supply and deposited at Bellaire Bank in an account in the name of Lakeland Oilfield Supply, Inc., because both companies had the same business address. Bellaire Bank relied upon the business addresses being the same for both companies

and nothing else. In discovery, the bank took the position that they were "one in the same." That is not the case. We do not consider this evidence sufficient to support a finding that Bellaire Bank paid the check proceeds to Oilfield Supply in good faith and in accordance with reasonable commercial standards. On the contrary, we find no evidence that Lakeland Pipe & Supply ever allowed Sutherland to deposit a check payable to Pipe & Supply into any account other than its San Jacinto account. Further, there is no evidence that the bank knew of any agency relationship between Sutherland and Pipe & Supply or Oilfield Supply and Pipe & Supply. Accordingly, we reverse the judgment of the trial court and hold that Bellaire Bank's actions amounted to commercially unreasonable conduct as a matter of law and is thus liable for the proceeds of the two converted Stillwater checks. Appellant's first point of error is sustained.

■ In points nine and ten appellant contends there is no evidence or insufficient evidence to support the court's finding that even if Bellaire Bank had inquired into the authority of Sutherland to negotiate the two checks, the bank would have been satisfied as to the authority of Sutherland to deposit Lakeland Pipe & Supply checks into Lakeland Oilfield Supply's account. Appellant has neglected to identify which finding of fact it is challenging. Furthermore, we are unable to locate any such finding of fact by the trial court in the record before us. Only the court's fifteenth finding of fact even resembles appellant's point of error, and it reads,

"Had the First National Bank of Bellaire, N.A. made inquiry as to the authority of Jim Sutherland to negotiate the checks at the bank on behalf of Lakeland Pipe & Supply, Inc., it would have been satisfied as to the authority of Jim Sutherland being the president of Lakeland Pipe & Supply, Inc. to hold property on behalf of the corporation as provided by law and to also find that Jim Sutherland was named as a director of the corporation Lakeland Pipe & Supply, Inc."

Neither of appellant's points of error properly attack any specific finding of the court. We therefore decline to address appellant's

ninth or tenth point of error. *See Williams v. Finley,* 567 S.W.2d 611 (Tex.Civ.App.— Amarillo 1978, writ ref'd n.r.e.).

■ In its fifth, sixth, seventh, and eighth points of error, appellant, without citing any relevant authority, contends the trial court erred in failing to find that Bellaire Bank's conduct constituted gross negligence. In oral argument before this court, appellant's only contention was that the bank should be found grossly negligent and subject to punitive damages because of the bank's statement that "if it had the opportunity to do it all over again, it would do the same thing." We do not believe this constitutes gross negligence, and absent any more persuasive argument we overrule appellant's points five through eight.

Having addressed the points of error necessary for a disposition of this appeal, we decline to address appellant's remaining points.

The judgment of the trial court is reversed and judgment is rendered against First National Bank of Bellaire, N.A., for actual damages in the amount of $40,214.97, plus six percent (6%) pre-judgment interest.