**SOUTHWEST BANK, Appellant and Appellee,**

v.

**INFORMATION SUPPORT CONCEPTS, INC., Appellee and Appellant.**

**No. 2–01–348–CV.**

Court of Appeals of Texas, Fort Worth.

Aug. 30, 2002.

Ray & Wilson, A. Bruce Wilson, Donald H. Ray, Fort Worth, for appellant.

The Law Offices of Jeff Kobs, Jeff Kobs, Mark A. Haney, Fort Worth, for appellee.

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

In this case, we decide whether the proportionate responsibility statute applies to a claim brought pursuant to section 3.420 of the Uniform Commercial Code ("UCC"). For the reasons set forth below, we hold that it does not. Accordingly, we will affirm the trial court's judgment.

### II. BACKGROUND

Kelly Rasco was employed by Information Support Concepts, Inc. ("ISC"). Over an eighteen-month period, she stole checks made payable to ISC as she opened the company's mail. She took them to Southwest Bank, wrote "Deposit Only" on the back of each one, and deposited them into her personal account at Southwest Bank. Rasco deposited 183 of ISC's checks, worth over $300,000, into her Southwest Bank account. None of the stolen checks bore ISC's endorsement, forged or otherwise. ISC did not have an account with Southwest Bank. Southwest Bank nevertheless accepted Rasco's deposits and obtained payment on the checks.

ISC sued Southwest Bank under UCC section 3.420 for conversion, seeking actual and exemplary damages. *See* Tex. Bus. & Com.Code Ann. § 3.420 (Vernon 2002). Southwest Bank raised the affirmative defenses of contributory negligence, assumption of risk, and failure to mitigate damages.[1] Southwest Bank also sought leave

---

1. Southwest Bank pleaded a number of additional affirmative defenses that are not subject to this appeal.

to join Rasco as a responsible third party under the proportionate responsibility statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 2002).

The trial court granted partial summary judgment in favor of ISC on Southwest Bank's contributory negligence and assumption of risk affirmative defenses, ruling that "as a matter of law [these] are not defenses to conversion under Tex. Bus. & Com. Cd. § 3.420." The trial court similarly determined that "there is no proportionate responsibility available to the Defendant through Kelly Rasco," and denied Southwest Bank's motion for leave to join her as a responsible third party. The trial court then granted ISC summary judgment on its UCC section 3.420 conversion claim and on the issue of actual damages, and granted Southwest Bank partial summary judgment on ISC's claim for exemplary damages. The trial court entered a final judgment for $328,252 against Southwest Bank.

In three issues, Southwest Bank complains that the trial court erred by: (1) determining that the proportionate responsibility statute does not apply to a UCC section 3.420 conversion action; (2) refusing to allow joinder of Rasco as a responsible third party pursuant to the proportionate responsibility statute; and (3) entering summary judgment in favor of ISC on Southwest Bank's mitigation of damages defense. In a single conditional cross issue, ISC argues that the trial court erred by granting summary judgment on its claim for exemplary damages.

### III. STANDARD OF REVIEW

Issues of statutory construction are legal questions. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000). We therefore review a trial court's construction of a statute de novo. *State Dep't. of Highways and Public Transp. v.*

*Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002); *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex.1999).

In construing a statute, our ultimate purpose is to discover and give effect to the legislature's intent in enacting it. *In re Canales*, 52 S.W.3d 698, 702 (Tex.2001) (orig. proceeding); *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 89 (Tex. 2001). We may consider the object sought to be attained by the statute; the circumstances under which the statute was enacted; legislative history; common law or former statutory provisions; consequences of a particular construction; administrative construction of the statute; and the title (caption), preamble, and emergency provisions. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). When two statutes conflict, the specific controls over the general. *See* TEX. GOV'T CODE ANN. § 311.026(b); *Mitchell v. City of Dallas*, 855 S.W.2d 741, 748 (Tex.App.-Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex.1994). Further, we shall construe a uniform code, such as the UCC, to effect its general purpose to make uniform the law of those states that enact it. TEX. GOV'T CODE ANN. § 311.028.

We presume the legislature intended a just and reasonable result in enacting a statute. TEX. GOV'T CODE ANN. § 311.021(3). We will not construe a statute in a manner that will lead to a foolish or absurd result when another alternative is available. *Del Indus., Inc. v. Tex. Workers' Comp. Ins. Fund*, 973 S.W.2d 743, 747–48 (Tex.App.-Austin 1998), *aff'd*, 35 S.W.3d 591 (Tex.2000).

### IV. THE UNIFORM COMMERCIAL CODE

Section 3.420 of the UCC is titled "Conversion of Instrument" and provides:

(a) The law applicable to conversion of personal property applies to instru-

ments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument *or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.*

TEX. BUS. & COM.CODE ANN. § 3.420(a) (emphasis added).[2] Provisions of the UCC such as section 3.420 are to be liberally construed and applied to promote the UCC's underlying purposes and policies. *Id.* § 1.102(a) (Vernon 1994). The underlying purposes and policies of the UCC are threefold: to simplify, clarify, and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and to make uniform the law among the various jurisdictions. *Id.* § 1.102(b).

■ As reflected in section 3.420, the UCC generally places the burden on the first bank in the collection chain to insure the requisite endorsements are present and authentic. *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex.1984); *Longview Bank & Trust Co. v. First Nat'l Bank*, 750 S.W.2d 297, 299 (Tex.App.-Fort Worth 1988, no pet.); *see* TEX. BUS. & COM.CODE ANN. § 3.420. The rationale is that depository banks are in the best position to discover forged or omitted endorsements because of their face-to-face dealings with the endorser or holder presenting the

check.[3] *Ames*, 672 S.W.2d at 450; *Longview Bank & Trust Co.*, 750 S.W.2d at 299. From this rationale, it follows that if a depository bank pays a check to one other than the actual payee or to his order, or is mistaken as to the payee's identity or is paid upon a forged endorsement of the payee, the depository bank is responsible. TEX. BUS. & COM.CODE ANN. § 3.420, official cmt. 1; *Lakeland Pipe & Supply, Inc. v. First Nat'l Bank of Bellaire*, 899 S.W.2d 230, 232–33 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *Cont'l State Bank v. Miles Gen. Contractors, Inc.*, 661 S.W.2d 770, 773 (Tex.App.-Fort Worth 1983, no writ); *Morris Plan Bank v. Cont'l Nat'l Bank*, 155 S.W.2d 407, 409 (Tex.Civ.App.-Fort Worth 1941, no writ); *see also Heusinger Hardware Co. v. Frost Nat'l Bank*, 364 S.W.2d 851 (Tex.Civ.App.-Eastland 1963, no writ). Under section 3.420, therefore, a depository bank is liable for conversion if it obtains payment on an instrument that is missing a necessary endorsement. *See* TEX. BUS. & COM.CODE ANN. § 3.420, official cmt. 1; *see also Ames*, 672 S.W.2d at 450 (holding bank's payment on instrument lacking proper endorsement resulted in conversion and made bank liable for face amount of instrument).

■ The depository bank is ultimately liable in the case of a forged or missing endorsement because of its warranty to the payor bank under section 4.208(a)(1). *See* TEX. BUS. & COM.CODE ANN.

---

**2.** In 1996, section 3.420 was added to the UCC as a modification of Section 3.419. Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex. Gen. Laws 4582, 4603 (current version at TEX. BUS. & COM.CODE ANN. § 3.420 (Vernon 2002)). Revised article 3 eliminates the defense previously available to depository banks when they dealt with the instrument in accordance with reasonable commercial standards. TEX. BUS. & COM.CODE ANN. § 3.420, official cmt. 3.

**3.** A depository bank is the first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter. *See* TEX. BUS. & COM.CODE ANN. §§ 3.103(c), 4.105(2). A payor bank is a bank that is the drawee of a draft. *See id.* §§ 3.103(c), 4.105(3). A drawee is a person ordered in a draft to make payment. *See id.* § 3.103(2).

§§ 4.208(a)(1), 3.420, official cmt. 3. A depository bank warrants to a payor bank to which a missing endorsement check is presented for payment that it was entitled to enforce the draft on behalf of a person *entitled to enforce the draft. Id.* § 4.208(a)(1). Thus, a depository bank is liable for conversion as a matter of law when it accepts for deposit into a third party's account checks that were not endorsed in the name of the payee. *Millens v. Kingston Trust Co.,* 118 Misc.2d 512, 461 N.Y.S.2d 938, 941 (N.Y.Sup.Ct.1983) (holding that where check drawn to named payee carried only "for deposit" endorsement, the depository bank converts the check if it accepts the check for deposit to any account other than that of the named payee).

Here, it is clear that Southwest Bank converted 183 checks in amounts totaling over $300,000 stolen by Rasco from ISC. The checks were not endorsed by ISC and, as the first bank in the collection chain, Southwest Bank was best situated to catch the missing endorsement and to not make or obtain payment on the checks. Southwest Bank consistently overlooked the missing endorsements, however, and in doing so converted the checks pursuant to section 3.420. In fact, Southwest Bank does not dispute the fact that it converted the checks stolen by Rasco. Instead, Southwest Bank contends that Rasco shares responsibility for the conversion and should be held proportionately liable.

## V. The Proportionate Responsibility Statute

The proportionate responsibility statute is set forth in chapter 33 of the civil practice and remedies code and provides, in part, "In an action to which this chapter applies, a claimant may not recover damages if his percentage of responsibility is greater than 50 percent." TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 1997). Section 33.002 of the statute is entitled "Applicability" and states:

> Except as provided by Subsections (b) and (c), this chapter applies to any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought.

*Id.* § 33.002(a). Subsection (b) of the applicability section lists various penal code violations that fall under the statute. Subsection (c), however, enumerates the specific types of civil claims that are *not* subject to the statute. *Id.* § 33.002(c). This subsection includes workers' compensation claims. *Id.* Subsection (h) specifies that actions brought under the Deceptive Trade Practices Act ("DTPA") are subject to the statute. *Id.* § 33.002(h). The statute provides that, on timely motion, a defendant may seek to join a responsible third party who has not been sued by the claimant and have the jury proportion liability between them. *Id.* § 33.004.

Southwest Bank sought to join Rasco under the proportionate responsibility statute to reduce its share of liability for converting the checks. *See id.* Southwest Bank contends that Rasco is a responsible third party under the statute because "[t]he conduct of Rasco according to Plaintiff's own allegations would clearly create liability on the part of Rasco to the Plaintiff for all or a part of Plaintiff's damages."

## VI. Statutory Construction Analysis

In its first two issues, Southwest Bank claims that the proportionate responsibility statute applies to ISC's UCC claim because: (1) the statute expressly applies to the "DTPA" and thus, by extension, to warranties governed by the UCC; (2) the

UCC does not give Southwest Bank recourse against Rasco, so the statute fills that void; and (3) the legislature intended the statute to apply to the UCC.

■ Southwest Bank points out that the proportionate responsibility statute applies to "any cause of action based on tort." *See id.* § 33.002(a). Focusing on this phrase, Southwest Bank argues that conversion is a tort cause of action and that therefore a UCC section 3.420 conversion action is a "cause of action based in tort," triggering application of the proportionate responsibility statute. ISC, on the other hand, argues that a UCC section 3.420 claim is a statutory cause of action, not a cause of action based on tort, and that the proportionate responsibility statute is not applicable.

In our effort to discover and give effect to the legislature's intent in enacting the proportionate responsibility statute and section 3.420 of the UCC, we do not view the words, phrases, and individual clauses in isolation, but rather we must examine them within the context of the entire act. *Meritor*, 44 S.W.3d at 90. If possible, each sentence, phrase, clause, and word must be given effect, so that the statute makes sense as a cohesive whole. *Id; see also* Tex. Gov't Code Ann. § 311.011 (Vernon 1998) (providing that words and phrases shall be construed according to rules of grammar and common usage). We will not, however, assign a meaning to a term or provision that would be inconsistent with other provisions of the statute. *See* Tex. Gov't Code Ann. § 311.011; *Steak & Ale, Inc. v. Borneman,* 62 S.W.3d 898, 905 (Tex.App.-Fort Worth 2001, no pet.).

Recent amendments to the UCC demonstrate a discrete legislative fault scheme uniquely applicable to banks. *See* Tex. Bus. & Com.Code Ann. §§ 3.405-.406 (Vernon 2002). Although, traditionally, con-tributory negligence by a plaintiff was not a defense to a bank's liability for conversion under section 3.420, recently, articles 3 and 4 of the UCC have been amended to permit some defenses by banks when an employer's negligence substantially contributes to the alteration of an instrument or to the making of a forged signature on an instrument. *See id.; see also* Donald J. Rapson, *Loss Allocation in Forgery and Fraud Cases: Significant Changes Under Revised Articles 3 and 4,* 42 Ala. L.Rev. 435, 457-64 (1991); *cf. DoAll Dallas Co. v. Trinity Nat'l Bank,* 498 S.W.2d 396, 402 (Tex.Civ.App.-Texarkana 1973, writ ref'd n.r.e.) (holding plaintiff's contributory negligence not a defense to a section 3.420 conversion claim); *Rosenthal v. Mfrs. Hanover Trust Co.,* 30 A.D.2d 650, 291 N.Y.S.2d 19, 20 (N.Y.App.Div.1968) (same). These defenses, the applicable burdens of proof, and any resultant proportionate responsibility are statutorily governed by the UCC, which does not include any provision for allocating responsibility to a responsible third party thief. *See* Tex. Bus. & Com.Code Ann. §§ 3.405-.406.

Thus, the statutory proportionate responsibility provisions of the UCC conflict with the general proportionate responsibility provisions set forth in chapter 33 of the civil practice and remedies code. When two statutes conflict, as here, we give effect to the more specific statute over the more general statute. Tex. Gov't Code Ann. § 311.026 (Vernon 1998). To the extent, therefore, that any proportionate responsibility provisions apply to ISC's section 3.420 conversion claim, it is the UCC's statutory loss allocation provision that applies, not the general proportionate responsibility statute. *See id.* Considering the UCC as a whole and our mandate to construe it to give effect to all of its provi-

**468**

sions consistently with other states to the extent possible, considering the proportionate responsibility statute set forth in chapter 33 of the civil practice and remedies code as a whole, and applying the Code Construction Act, we hold that the proportionate responsibility statute set forth in chapter 33 of the civil practice and remedies code does not apply to a UCC section 3.420 claim for conversion.

In light of this holding, we decline to address Southwest Bank's contention that a section 3.420 is a cause of action "based on tort" and, therefore, necessarily falls within the ambit of the proportionate responsibility statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.002(a) (Vernon 1997). Even assuming the accuracy of Southwest Bank's argument, the UCC's specific loss allocation provision governs UCC claims, not the general proportionate responsibility statute. *See* TEX. GOV'T CODE ANN. § 311.026(b).

Nevertheless, Southwest Bank contends that because the proportionate responsibility statute expressly applies to DTPA claims, its application implicitly extends to warranties governed by the UCC. We cannot agree. First, the legislature has provided an explicit statutory loss allocation provision available to banks in certain circumstances. Second, the fact that the legislature expressly included DTPA claims within the ambit of the general proportionate responsibility statute does not support the conclusion that statutory UCC claims are implicitly included. *See* TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 1998) (recognizing non-exclusive list including certain items *may* include non-listed items).

Finally, we address Southwest Bank's claim that the UCC does not afford it an adequate recourse against Rasco and that the proportionate responsibility statute was intended to fill this gap. Section 3.416

of the UCC provides that when, as here, a person transfers an instrument for consideration, the person warrants to the transferee that she is entitled to enforce the instrument. TEX. BUS. & COM.CODE ANN. § 3.416(a) (Vernon 2002). If in fact the transferor is not entitled to enforce the instrument and the transferee took the instrument in good faith, the transferee may recover damages from the transferor for breach of transfer warranty. *Id.* § 3.416(b). Transfer warranties in favor of the immediate transferee apply to all persons who transfer an instrument for consideration whether or not the transfer is accompanied by endorsement. *Id.* § 3.416, official cmt. 1.

Applying section 3.416 to the facts at hand, each time Rasco transferred a stolen check to Southwest Bank, the immediate transferee, she warranted her entitlement to enforce the check. Because in fact Rasco was not entitled to enforce the check, Southwest Bank has a cause of action for breach of transfer warranty against her. Thus, contrary to its contention, Southwest Bank does possess a remedy under the UCC against Rasco.

We hold that the trial court correctly denied Southwest Bank's motion for leave to join Rasco as a responsible third party under the proportionate responsibility statute set forth in chapter 33 of the civil practice and remedies code in ISC's UCC section 3.420 claim for conversion. We overrule Southwest Bank's first and second issues.

## VII. MITIGATION OF DAMAGES

In its third issue, Southwest Bank alleges that the trial court erred in granting summary judgment to ISC on Southwest Bank's mitigation of damages affirmative defense. Southwest Bank contends that ISC could have mitigated the damages it suffered from Southwest Bank's

acts of conversion by inspecting a statement it received from a *different* bank months before discovering Rasco had been stealing checks from the company and depositing them with Southwest Bank.

The record reflects that Rasco withdrew $1,554.97 from ISC's Bank of America account by forging the name of ISC's chief financial officer on a check. Southwest Bank argues that if ISC had inspected its bank statement from Bank of America, it would have discovered Rasco's forgery and theft, fired her, and thus unwittingly interrupted her stream of stolen check deposits at Southwest Bank. As a consequence, ISC would have sustained smaller damages from Southwest Bank's conversion of the checks.

ISC characterizes Southwest Bank's argument as a plea of contributory negligence rather than a mitigation of damages defense. We agree. Southwest Bank contends that if ISC had inspected its Bank of America statement, then a chain reaction of events would have precluded Southwest Bank's conversion of the stolen checks; that is, ISC's negligent failure to inspect its Bank of America statement proximately caused Southwest Bank's conversion of the checks. This is a contributory negligence argument, not a mitigation issue. *Cf. Great Am. Ins. Co. v. N. Austin Mun. Utility Dist. No. 1,* 908 S.W.2d 415, 426 (Tex.1995) (holding doctrine of mitigation of damages inapplicable; the doctrine prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff). As we already have noted, any allocation of loss between the parties based on their proportionate responsibility is governed exclusively by the provisions of the UCC. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of ISC on Southwest Bank's purported miti-

gation of damages affirmative defense. We overrule Southwest Bank's third issue.

## VIII. ISC's Conditional Cross Issue

In a single cross issue, ISC asks us to remand its claim for exemplary damages only if we reverse and remand the trial court's judgment. Because we affirm the trial court's judgment, we do not reach ISC's conditional cross issue.

## IX. Conclusion

Having overruled each of Southwest Bank's three issues, we affirm the trial court's judgment.