ZINTER, Justice
(concurring specially on Issue 2 regarding “contribution among joint tortfeasors,” and concurring in result on Issue 3 regarding mitigation).
I
[¶ 56.] In Issue 2, the Court discusses “applying the Uniform Contribution among Joint Tortfeasors Act.” I concur specially only to point out that we are not applying that act. The Uniform Contribution among Joint Tortfeasors Act (SDCL 15-8-11 to 15-8-15 and 15-8-16 to 15-8-22) is a 1945 enactment[8] regulating the right of contribution among defendant tortfeasors who are jointly or severally liable to a plaintiff. On the other hand, SDCL 15 — 8— 15.1 and 15.2, the statutes we apply today, are a 1987 Act[9] regulating when, and to what extent, defendant tortfeasors may be held jointly and severally liable to a plaintiff. Although codified together, these statutes were enacted as separate acts and govern different subjects.
[¶ 57.] The 1945 Act is South Dakota’s version of the 1939 Uniform Contribution Among Tortfeasors Act. See 1945 S.D. Sess. Laws. ch. 167; Uniform Contribution *404 Among Tortfeasors Act, 12 U.L.A. 57 et seq. (1939). That Act creates and regulates the right of contribution among “joint tortfeasors.” See SDCL 15-8-11, 12, and 15. Joint tortfeasors are defined as “two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.” SDCL 15-8-11 (emphasis added). Thus, for the Contribution Among Joint Tortfeasors Act to apply, there first must be joint or several liability of two or more tortfeasors. If two or more tortfeasors are jointly liable to a plaintiff, then the 1945 Act authorizes and regulates contribution among those joint tortfeasors.
[¶ 58.] The 1987 Act we apply today (SDCL 15-8-15.1 and 15-8-15.2) does not involve contribution among joint tortfea-sors. It regulates the predicate question whether, and to what extent, individuals are jointly and severally liable to a plaintiff in the first instance. The primary purpose of this Act is to limit the extent of joint and several liability of defendants. See SDCL 15-8-15.1.
[¶ 59.] Thus, although codified together, separate procedural steps and separate substantive considerations are involved in applying the statutes in SDCL ch. 15-8. As today’s case illustrates, a plaintiff seeking a joint and several liability judgment against a defendant must first satisfy the limitations on joint and several liability in the 1987 Act. Once the existence and extent of joint and several liability is established under SDCL 15-8-15.1 and 15-8-15.2, joint tortfeasors may then seek contribution among themselves under the 1945 Act (SDCL 15-8-15). Today’s case only involves the first step of determining the extent of LaBolt’s joint and several liability under SDCL 15-8-15.1 and 15 — 8— 15.2. Contribution among the joint tortfea-sors is not at issue.
II
[¶ 60.] On Issue 3 regarding mitigation of damages, I concur in the result reached by Chief Justice Gilbertson. Considering the summary judgment facts in a light most favorable to LaBolt, those facts only suggest that WestCon suspected theft. But because the most favorable inferences from the summary judgment facts do not suggest that WestCon had full and specific knowledge of the particular injury and harm resulting from Pew’s conversions until Pew’s thefts were actually discovered, mitigation principles do not apply as a matter of law.
[¶ 61.] Both Chief Justice Gilbertson and Justice Konenkamp agree that contributory negligence is not a defense to an action for conversion. See Justice Konen-kamp’s dissent ¶ 78 (citing Restatement (Second) of Torts § 918(1)); Chief Justice Gilbertson’s opinion ¶ 50 (citing Rensch, 393 N.W.2d 269). With respect to mitigation of damages, both opinions rely on Security State Bank, which discussed the general rule and the limitation on the defense of avoidable consequences (mitigation of damages) as set forth in the Restatement (Second) of Torts § 918(1) and (2):
(1) Except as stated in subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.
(2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tort-feasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests.
*405 433 N.W.2d at 235. We explained the general rule stated in subsection (1) and its limitation stated in subsection (2) as follows:
Where one has rendered the consequences of the wrongful act complained of more severe or injurious by some voluntary act which it was such person’s duty to refrain from, or if by neglect the person has failed to exert himself reasonably to eliminate the injury and prevent the damages and has thereby suffered some additional injury, he cannot recover such damages as are to be attributed to such acts or omissions.
This rule does not require [a plaintiff] to anticipate the injury before it occursf, which is contributory negligence] but rather relates to an act or omission relating to the injury after it occurs[, which is mitigation of damages].

Id.

[¶ 62.] The disagreement in this case arises in application of the “antieipat[ion of] the injury” distinction mentioned in this last limiting sentence. Both legal and factual difficulties make application of this distinction problematic in continuing tort cases. The legal difficulty arises because of the similarity of the doctrines of contributory negligence and mitigation of damages:
Both doctrines rest upon the same fundamental policy of making recovery depend upon the plaintiffs proper care for the protection of his own interests, and both require of him only the standard of the reasonable person under the circumstances. The statement commonly made as to the distinction between the two is that contributory negligence is negligence of the plaintiff before any damage, or any invasion of his rights, has occurred, which bars all [ (or in South Dakota may bar some) ] recovery. The rule of avoidable consequences [ (mitigation of damages) ] comes into play after a legal wrong has occurred, but while some damages may still be averted, and bars recovery only for such damages.
C.W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 65, at 458 (5th ed.1984).
[¶ 63.] The factual difficulty arises because Pew stole approximately 100 loads of grain over a period of two years. Further, as Justice Konenkamp correctly points out, LaBolt produced evidence for summary judgment purposes suggesting WestCon “suspected” that there was an ongoing loss of grain that was being caused by theft. Justice Konenkamp’s dissent ¶¶ 74-75. WestCon suspected theft as early as May 5, 2003, nineteen months before all of the conversions 'had occurred and all the damages had been sustained. And finally, although WestCon suspected theft, there is evidence suggesting that if WestCon would have taken better security measures earlier, Pew would have been apprehended earlier, which would have stopped the thefts and reduced WestCon’s damages.
[¶ 64.] Thus the dilemma: was West-Con’s failure to act on “suspicion” the unavailable defense of contributory negligence in failing to discover the invasion of its rights before the injury or damage was incurred? Or, was WestCon’s failure to act on “suspicion” the available defense of negligence in failure to mitigate damages after the conversion had occurred but while some damages could still have been averted? Most courts conclude that failure to act on suspicion is contributory negligence rather than the failure to mitigate damages. See infra ¶¶ 67-71.
[¶ 65.] Justice Konenkamp relies on an unpublished federal district court opinion holding that the mitigation defense barred recovery in a continuing forged endorsement scheme “after February 29, 1992, since [the plaintiff], with knowledge of [the *406 tortfeasor’s] fraudulent scheme, heedlessly failed to protect its own interests after that date.” Universal Premium, Acceptance Corp. v. York Bank & Trust Co., 1996 WL 432488, at *4 (E.D.Pa.1996) (emphasis added) (unpublished). But that case is inapplicable because that plaintiffs acts and omissions occurred with full knowledge and only after the plaintiff had acquired specific information of the tort-feasor’s scheme. The court noted that the plaintiff was acting “with full knowledge,” and heedlessly failed to protect its interests. Id. at *6 (emphasis added) (citing Restatement (Second) of Torts § 918(2)). The court further noted that it had applied mitigation rules “only for the period after [plaintiff] received specific information about [the particular tortfeasor’s] peculations ....” Id. at *7 (emphasis added).
[¶ 66.] In our case, there is no dispute that as of May 5, 2003, WestCon did not have full knowledge and the specific information regarding Pew’s thefts. LaBolt’s factual allegations resisting summary judgment only reflect WestCon suspected that Pew’s type of theft might be occurring. Justice Konenkamp’s dissent ¶¶ 74-75. Because LaBolt produced no evidence even suggesting that WestCon had full and specific knowledge that Pew was stealing truckloads of grain from one of WestCon’s silos, Universal Premium is no authority for a mitigation defense in this case.
[¶ 67.] Courts of Appeal from Arizona, Wisconsin, and Texas more persuasively demonstrate proper application of the mitigation rules discussed in Security State Bank and the Restatement (Second) of Torts § 918(2) when there is an ongoing series of conversions. Most apposite is Strawberry Water Co. v. Paulsen, 220 Ariz. 401, 207 P.3d 654 (Ariz.Ct.App.2008). In that case, a property owner had been diverting water from a water company’s supply line by means of a diversion pipe. Id. at 405, 207 P.3d at 658. The water company sued the property owner for conversion of water occurring over the four years before the water company actually discovered the pipe. Id. Like the case we are considering today, that defendant argued that the plaintiff should have mitigated damages by taking measures earlier to ascertain the cause of its losses. But the court noted that the damages at issue were for a period preceding the plaintiffs “discovery” of the specific conversion by the specific defendant. Id. at 410, 207 P.3d at 663. Therefore, the court noted that the evidence the defendants relied on to support their mitigation instruction referred to the plaintiffs “diligence in discovering, not remedying, the damages.” Id. (emphasis added). The court further held: “Mitigation of damages only applies once the plaintiff, knowing of the damage, fails to mitigate. The plaintiffs knowledge must be of the ‘particular harm’ intended by an intentional tortfeasor.” Id. (emphasis added) (citing Restatement (Second) of Torts § 918(2)). Because the water company did not have knowledge of the particular harm until it actually discovered the property owner’s diversion pipe, the court refused to allow a mitigation defense that was premised on the theory that an earlier discovery would have prevented future conversions and damages. Id. at 410-11, 207 P.3d at 663-64.
[¶ 68.] The Wisconsin Court of Appeals, interpreting Restatement (Second) of Torts § 918(2), also concluded that actual knowledge of an intentional tort is required before the mitigation defense may be asserted. S.C. Johnson & Son, Inc. v. Morris, 322 Wis.2d 766, 786, 779 N.W.2d 19, 29 (Wis.Ct.App.2009). In that case, employees of S.C. Johnson had conspired with outside transportation companies over a period of ten years to solicit bribes in return for inflating transportation invoices and overcharging S.C. Johnson. Id. at *407 775-76, 779 N.W.2d at 24. The defendants argued “that S.C. Johnson had a duty to put a stop to the conspiracy at a much earlier date because it should have figured out for itself that something was amiss and duly mitigated the damage.” Id. at 774, 779 N.W.2d at 23. The question presented was the same mitigation question with which we are confronted in this continuing tort case; i.e.:
[W]hether a ... victim of an intentional tort must have actual knowledge of the tort before it is required to mitigate damages, as [plaintiff] asserts, or whether the duty to mitigate arises when it is shown that the victim might have found out about the tort earlier had there been a better internal corporate investigation mechanism.
Id at 784, 779 N.W.2d at 28.
[¶ 69.] The S.C. Johnson court concluded that a mitigation defense is unavailable under the “should have known” theory. Id Instead, the court applied the Restatement (Second) of Torts § 918(2)’s requirement of actual knowledge of the tort, explaining:
It makes no sense to us that an injured party should be held responsible for negligently failing to discover that someone else was intentionally harming them. Instead if one party is intentionally harming another, logic would hold that the duty of the victim should be less than it would be for contractual breaches or negligence. So unless the victim, with actual knowledge of the danger, intentionally fails to act in the protection of his or her own interests or is heedlessly indifferent to them, there is no duty to mitigate an intentional tort.
S.C. Johnson, 322 Wis.2d at 786, 779 N.W.2d at 29 (emphasis added). The court also declined to allow “should have discovered” mitigation theories because they would “expand! ] the duty to mitigate in such a way as to place a burden on the victim to investigate whether warning signals existed!, which] would allow tortfea-sors to purposely exploit a victim’s weak internal investigation mechanism and then use it as an affirmative defense at trial.” Id at 774, 779 N.W.2d at 23.
[¶ 70.] In Southwest Bank v. Information Support Concepts, Inc., 85 S.W.3d 462, 463 (Tex.App.2002), an employee converted over $300,000 by depositing 183 of her employer’s checks in her personal bank account over an eighteen-month period. Her employer did not have an account at that depository bank. Nevertheless, the bank accepted the deposits over inadequate endorsements and allowed payment on the checks. Id. The bank’s mitigation defense was predicated on the theory that if the employer had only looked at its bank statement, it would have discovered the forgery and theft and “interrupted [the employee’s] stream of stolen check deposits at [the depository bank]. As a consequence, [employer] would have sustained smaller damages from [the depository bank’s] conversion of the checks.” Id. at 469. But the Texas Court of Appeals disallowed the mitigation defense, holding that this “chain reaction of events” theory was contributory negligence rather than the failure to mitigate damages. Id. See also Morgan, Olmstead, Kennedy & Gardner, Inc. v. Schipa, 585 F.Supp. 245, 249 (D.C.N.Y.1984) (rejecting a mitigation defense on defendants’ argument that plaintiffs’ acts or omissions in a continuing tort case “delayed discovery of the alleged fraud and therefore allowed damages to continue to grow”).
[¶ 71.] Like Strawberry Water Co., S.C. Johnson, and Southwest Bank, LaBolt’s mitigation defense is premised on a chain of events theory conjecturing that West-Con would have discovered Pew’s thefts earlier if it had employed security meas *408 ures earlier. This would have interrupted Pew’s stream of thefts, and in turn, West-Con would have sustained fewer damages. But as those courts explain, this chain of events theory is a claim of contributory negligence for the failure to discover the conversion and damages rather than the failure to act reasonably in mitigating damages after the conversion has occurred.
[¶ 72.] “[W]e require ‘those resisting summary judgment [to] show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof.’ ” Bordeaux v. Shannon Cnty. Schs, 2005 S.D. 117, ¶ 14, 707 N.W.2d 123, 127 (quoting Chem-Age Indus., 2002 S.D. 122, ¶ 18, 652 N.W.2d at 765). In this case, LaBolt had the ultimate trial burden of proving the defense of failure to mitigate damages. Kowing v. Williams, 75 S.D. 454, 459, 67 N.W.2d 780, 783 (1954). Yet it failed to meet its summary judgment burden of showing it would have been able to present evidence that WestCon had full and specific knowledge of the particular harm being inflicted by Pew. Like Strawberry Water Co., S.C. Johnson, and Southwest Bank, there is no evidence that WestCon had actual knowledge of Pew’s conversions. Until Pew was caught, WestCon may have suspected theft, but LaBolt identified no evidence even inferentially suggesting that West-Con had full knowledge of the particular harm; i.e., that Pew was stealing from a WestCon silo by acting as if he was normally transporting grain. Because West-Con’s suspicions are not full knowledge of the specific information surrounding Pew’s conversions, LaBolt failed to meet its summary judgment burden as a matter of law. Even Universal Premium did not allow the mitigation defense until that plaintiff acquired “full knowledge” of the “specific information” concerning the particular tortfeasor’s scheme. Universal Premium, 1996 WL 432488, at * 6-7. For the foregoing reasons, I would affirm the circuit court.

. An act entitled: "An Act Concerning Contribution Among Tortfeasors, Release of Tortfea-sors, Procedure Enabling Recovery of Contribution, and Making Uniform the Law with Reference Thereto.” 1945 S.D. Sess. Laws. ch. 167, § 2.

.An act entitled: "An Act to modify the doctrine of joint and several liability.” 1987 S.D. Sess. Laws. ch. 154, §§ 1, 2.