## D. C. CLARK v. STATE.

No. A-2778.   Opinion Filed October 20, 1917.

Rehearing Denied February 9, 1918.

(170 Pac. 275.)

1.   **LARCENY—Property Subject—City Water.** Water impounded in the mains and pipes of a city's water system is the personal property of the city, and, as such, is the subject of larceny.

2.   **SAME—Offense—Use of Unregistered Water.** A water consumer who, by false connections, carries water around his meter and consumes it on his property, without the consent of the owner and without having it registered, and with intention thus to deprive the owner thereof without payment therefor, is guilty of larceny.

3.   **SAME—Surrender of Possession.** There is no surrender of possession of water by the owner of a water system until the water has passed through the meter, where the consumer is paying for the water used according to the amount registered by the meter.

*Appeal from County Court, Washita County;*

*L. R. Shean, Judge.*

D. C. Clark was convicted of petit larceny, and he appeals.   Affirmed.

*Massingale & Duff,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J.   D. C. Clark, one of the managers of the Cordell Ice & Fuel Company, was convicted of the crime of petit larceny in Washita county, Okla., in that he caused a pipe to be attached to the water pipe in which the city of Cordell had stored, and was distributing, certain water to the Cordell Ice & Fuel Company for a certain price or rental, and by means of such attached pipe the said water was diverted so that it flowed around the

meter through which it was to be measured to said Ice & Fuel Company and into the pipes running into said plant, by means of which trick the city of Cordell was defrauded or deprived of said water and the value of the same unlawfully.

There is no controversy as to the guilt of this defendant if all the facts proved constitute the crime of larceny under our statute. There was no defense interposed. The defendant relies solely upon the insufficiency of the evidence to constitute the crime of petit larceny.

First, it is contended that, by reason of the provisions of our statute (article 4, c. 10, Rev. Laws 1910), a city or town acquires no ownership in the water which it may impound in its pipes for the purpose of distribution to consumers, but that only a privilege is created which permits the city to acquire by condemnation, purchase, rental, lease, etc., certain lands or water districts from which a supply of water may be obtained for distribution to consumers under fixed rates or taxes, and that if a person taps the mains or pipes in which the city has impounded its water and diverts it to a use for which the city did not intend it, or diverts it so that it would not pass through the regular meter which the city uses for the purpose of measurement, the person so diverting such water and converting it to his own use without the knowledge and consent of said city has only deprived the city of its regular rental charge or taxes, and is not guilty of stealing its property.

With this contention we cannot agree. The fact that the state has seen fit to permit a city or town to establish a waterworks system, and to serve the citizens of such city or town with water for private consumption,

and to charge a fixed rate for such service, does not change the water which the city has taken into its possession and under its control by impounding it within the confines of its mains and pipes, of its character as property. That water so confined is personal property, capable of ownership, cannot be disputed. The courts have so held practically without dissent. The rule is stated in Cyc. vol. 40, p. 55, as follows:

"In the character of personal property, water, separated from its source or from the body of which it constituted a part, may be bought and sold like other commodities, as when it is supplied through artificial conduits for domestic use, or irrigation, or when it is solidified in the form of ice."

Wiel, in his work on Water Rights in the Western States (3d Ed.) vol. 1, sec. 31, states the proposition as follows:

"In the civil law it is said: 'Upon these principles, running waters are held by the Roman *juris-consulti* to be common to all men. But it also follows that this decision does not apply to waters, the appropriation of which (to the exclusion of the common enjoyment) is necessary for a certain purpose, as water included in a pipe or other vessel for certain uses.' Vinnius says, in commenting on the passage in the Institutes above quoted, regarding air, running water, and the sea: 'First of all, these things are in their nature suited to the common use of all; and next, in case any of these things is such that in its nature it can be taken into possession, it belongs to the possessor so far as he does not injure the general use by such occupation.' And, commenting upon the same passage in the Institutes, a Scotch case says: 'Water drawn from a river into vessels or into pounds becomes private property.' No one owns the air, but the inventor who liquifies it owns so much as is liquid in his laboratory; it is his private property while in his possession.

"Pothier illustrates it as follows: 'One may put the case, for example, where I go to dip water from a river. I acquire the ownership of. the water which I have taken, and with which I have filled my pitcher, by title of occupancy; for this water, being a thing which belonged to no person, to which no person had any exclusive right whatever, I have been able, on taking it into my possession, to acquire the ownership of it by right of capture. This is why, in case, on returning from the river I have, for some purpose, left my pitcher standing on the road, with the intention of returning later to fetch it where I left it—if, in the meantime, a passer-by, having found my pitcher, proceeds (to save himself the trouble of going to the river) to pour into his pitcher the water that was in mine, he has committed against me an actual theft of that water, which water was a thing of which I was actually the proprietor, and of which I retained the possession through the intention I had of returning for it at the place where I left it. Note that the flow of the stream must not be confounded with the running water itself, which is designated *aqua profluens.*'

"The common law is stated in identical terms: 'None can have any property in the water itself, except in the particular portion which he may choose to abstract from the stream, and take into his possession, and that during the time of his possession, only.' In a well known case in the House of Lords, it is said that no one can have any property in the running water of the stream, 'which can only be appropriated by severance, and which may be lawfully so appropriated by everyone having a right of access to it (the riparian proprietors). Lord Campbell declared that water in a cistern is private property, and, in a very recent case in House of Lords, the Chancellor said that water in an artificial pond is 'water with somewhat of a proprietary right.' In a New York case it is laid down: 'Water, when reduced to possession, is

property, and it may be bought and sold and have a market value, but it must be in actual possession, subject to control and management.'"

Running water has ofttimes been compared to wild animals, birds, and fishes, which, before capture and confinement, belong to no one, but after capture belong to him who captures them.

Nor can it be successfully contended that water confined within the mains and pipes of the city's water system may not be the subject of larceny. It was such at common law. *Ferens v. O'Brien,* 11 Q. B. D. 21, Cox's Crim. Cases, 332; 25 Cyc. p. 13, note 11. Neither is there anything in the contention that, because by section 2665, Rev. Laws 1910, the Legislature provided a special act making it a misdemeanor for any person to pipe gas so that it may be consumed without passing through a meter so as to avoid paying therefor, the general larceny statute does not cover an offense of this kind. A similar contention was made in the case of *Ferens v. O'Brien, supra,* where counsel for the respondent submitted that water was not the subject of larceny when so confined because, by special Waterworks Clauses Acts (10 & 11 Vict. c. 17, sec. 59, and 26 & 27 Vict. c. 93, sec. 20), penalties were enacted for the abstraction of water from the company's mains or pipes without agreement with the company. But it was held that such sections of the Waterworks Clauses Acts did not take away the remedy under the larceny acts.

Also in the case of *Woods v. People,* 222 Ill. 293, 78 N. E. 607, 7 L. R. A. (N. S.) 520, 113 Am. St. Rep. 415, 6 Ann. Cas. 736, it was held:

"A gas consumer who, by false connections, carries gas consumed on his premises around the meter so that it

is not registered, may be prosecuted for larceny, notwithstanding a statute providing for the punishment of persons tampering or making false connections with gas pipes so that gas might be consumed without being registered by a meter."

Neither is there anything in the contention that the state failed to prove that the water so fraudulently consumed had any value. The state did prove that the rate charged at the time for water consumption was from 20 to 35 cents a thousand gallons, and the evidence shows that the Cordell Ice & Fuel Company during the time this cut-off was in existence consumed in the neighborhood of 50,000 gallons of water. In the absence of any contrary showing this proof was sufficient, as it will not be presumed by this court that the reasonable market value of such commodity was less than the rate charged by said city at that time, nor will it be presumed that said commodity was of no value whatever. The selling and not the cost price controls as to value. *Woods v. People, supra.*

Finally, it is contended that the proof was insufficient to warrant a conviction, even if it be admitted that the water was personal property owned by the city of New Cordell, and had a value. Counsel state their proposition thus:

"It is in evidence that the city had put in a meter, or meters, for measuring the value of water from the city mains into the plant of the Cordell Ice & Fuel Company, of which the defendant was an officer, and that under the direction of the defendant a by-pass was made around this meter so that the water would be conducted from the mains into the ice plant without being taken through the meter for registering, and, in fact, this is the whole case.

10-14

"It is a self-evident proposition that, by placing the meters at the defendant's property, the city yielded to him or the Cordell Ice & Fuel Company, of which he was manager, the possession and ownership of all water that the ice plant could use or might use, in so far as it lay within the power of the city to part with the ownership of water. The only requirement the city made was that such water as was used in the ice plant should be conducted through pipes leading through meters where the quantity of water consumed was registered, so that the city authorities might be able to determine exactly the water rent or tax which the defendant and his ice plant would be expected to pay.

"It is also self-evident that after water had passed into the ice plant from the city mains that the city had no claim of ownership in this water, and the defendant might use said water as he chose to use it.

"In the instant case there can be no question but that the city parted with both the possession and whatever ownership it had, if any, in the water. It had no right or claim of right to any water after it left its main, and if the defendant appropriated the water in the manner charged in the information, the city having yielded to him its right of possession to the water, and not having an ownership therein, and not reserving any right of ownership in the water, then the defendant could not be held for the crime of larceny."

The facts do not warrant nor support the argument aforesaid. The city of New Cordell had contracted to supply the Cordell Ice & Fuel Company with water at a certain meter rate. It had connected its water main with the place of business of the Cordell Ice & Fuel Company by a pipe which ran through a meter, and only surrendered possession of the water to the Cordell Ice & Fuel Company so long as the same was measured in accordance with the contract. The city did not part with

the possession of the water until after it had passed through the meter. When the defendant, by means of the trick of placing a pipe in front of the meter to run around it and connect with the pipe behind the meter, shut off the cock in front of the meter so that water could not run through the same, he obtained possession of the city's water by fraud and stealth, and will not be heard to say in this court, under such circumstances, that the city parted with the possession and ownership of its water voluntarily.

After a careful examination of the record and due consideration of all the points urged by counsel for plaintiff in error as grounds for reversal of this judgment, we are convinced that the alleged errors are wholly technical, and without substantial foundation in law; that justice has been meted out to this defendant, who, by trickery, would deprive his fellow citizens of property which they had acquired and were maintaining in part by general taxation. The punishment provided is inadequate for the offense committed. The judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.