450 P.2d 679

Jack COLLINS also known as Jack Y. Collins also known as John C. Collins, dba Collins Cars, Collins Cars, Inc., an Arizona corporation, and Charles S. Ellis, also known as Chuck Ellis, Appellants,

v.

James DILCHER and Billie Dilcher, husband and wife, Appellees.

No. 8544.

Supreme Court of Arizona.

In Division.

Feb. 13, 1969.

Rehearing Denied March 18, 1969.

**222**

Peterson, Estrada, Matz & Machmer, by Theodore Matz, Phoenix, for appellants.

Herbert Mallamo, Phoenix, for appellees.

McFARLAND, Justice.

Plaintiffs James Dilcher and his wife Billie Dilcher, hereinafter referred to as Dilcher or plaintiffs, sued defendants Jack Collins and Collins Cars, Inc., hereinafter referred to as Collins or defendants, for damages. The complaint was in three counts: slander, conversion of an automobile, and assault and battery. A jury brought in a verdict in favor of plaintiffs on each count against the defendants Jack Collins, individually, Jack Collins dba Collins Cars, and Collins Cars, Inc., a corporation. Defendants have appealed.

The facts indicate that plaintiffs bought a 1958 Ford at defendants' car lot for $1295 and received from Chuck Ellis, defendants' manager, a receipt for payment in full. Chuck Ellis left Collins's employ without turning over the money for the Ford. About six weeks later, plaintiffs returned to the car lot and requested some repairs pursuant to an alleged warranty, advising Collins that they were going to go back east on their vacation.

Collins testified that he had no knowledge of the sale. At this point he still had the certificate of title to the car. He failed to recognize that any wrong done to him had been done by his former employee, Ellis, and not by plaintiffs. Collins attempted to seize the car in order to protect himself. . He told plaintiffs to take the car to Read Mullan's shop for the needed repairs, sent two of his employees named Strain and Perry along with plaintiffs, and he himself followed them in his car.

Collins decided to get help from the police in preventing plaintiffs from retaining possession of the car. He ordered Strain to call the police and to tell them that plaintiffs were driving a stolen car. He later admitted that he also knew plaintiffs did not steal it, but that he knew the police would not come to help him straighten out a mere argument over the unpaid price, and so had requested Strain to report that the car had been stolen.

While waiting for the police, Mrs. Dilcher attempted to drive the car away, and Collins attempted to prevent her from doing so. They scuffled over the keys, and over her right to get in the car and drive off. Collins had the driveway blocked by another vehicle and Mrs. Dilcher drove off a 14-inch curb in attempting to get the car off the lot. This caused the car to "hang up". She got out, went back to the garage and fainted. She suffered some minor injuries not readily visible. She claimed that the injuries were inflicted upon her by Collins in the melee; he claimed that if she had any injury it was suffered in the attempt to drive the car over the curb. She was taken to Memorial Hospital by ambulance. The police officer who came in answer to the "stolen car" report examined Mrs. Dilcher before she left in the ambulance.

Collins testified that after the police arrived he learned that Mr. and Mrs. Dilcher had receipts for $900 for the purchase of the car; that the police showed him the receipts which he stated were reported to be signed by Mr. Ellis. Collins exhibited his title certificate and the officer decided to give him possession of the car. It contained some personal effects of

plaintiffs. The jury's verdicts were as follows:

For conversion of the car and contents, $1429.85 plus $8,000 punitive damages;

For assault and battery, $64.95 plus $2,000 punitive damages;

For slander, $750 plus $4,000 punitive damages.

The defendants contend that the court erred in denying their motion for new trial based on the misconduct of plaintiffs' counsel in the closing argument. The plaintiffs contend the statements were taken out of context and that counsel was justified in making them because of the statements made by defendants' counsel in his argument. Defendants' counsel's argument was not made a part of the record on appeal, so we cannot now pass on this question.

■ While this case was evidently fought hard by both sides, some of the statements made by counsel for plaintiffs would indicate that he went beyond the bounds of strict propriety. However, no timely and proper objection was made by defendants' counsel. In spite of the fact that he interrupted the argument on several occasions to object to statements of opposing counsel, he did not object to any of the statements of counsel which he now contends was error, nor did he ask for a mistrial, until after the verdict was rendered and a motion for a new trial had been filed. At that time it was too late. In Bruno v. San Xavier Rock and Sand Co., 76 Ariz. 250, 263 P.2d 308, we said:

"'* * * if appellant deemed the argument so prejudicial as that neither an explanation or withdrawal by counsel, nor an instruction by the court, would have rendered the argument harmless, request should have been made to withdraw the case from the jury and discharge the panel. We do not think a litigant should be permitted to lie in wait, take chances on a favorable verdict and, being disappointed, sally from ambush and, for the first time, complain of an improper argument in the motion for a new trial.' "

In the case of Beliak v. Plants, 93 Ariz. 266, 379 P.2d 976, we said:

"It is asserted generally that defendant's argument, 'among other things, consisted of accusations, wholly unwarranted by the evidence, that the plaintiff, his family, his witnesses and his counsel misrepresented evidence and presented false evidence in order to fraudulently deceive the jury.' We think the answer to this assignment lies in the fact that the plaintiff did not make an objection to the argument before the case went to the jury. Misconduct in the closing argument was first raised in the trial court on plaintiff's motion for new trial. Our announced rule is that unless misconduct is so serious that no admonishment could undo the damage, the failure to make timely objection is a waiver of error." 93 Ariz. at pp. 268, 269, 379 P.2d at p. 978.

■ Since plaintiffs did not raise these questions before a motion for new trial, they have waived them and, as we have repeatedly held, we will not give a litigant a second chance to win on an error which was not called to the trial court's attention in time to permit its correction.

Defendant also contends that the court in giving the instruction on slander "completely neglected to include the necessity of a finding of publication to others of the words alleged to be slanderous." Counsel for defendants made the following exception to the instruction on slander:

"Defendant excepts to this one, your Honor, It's our position that as to the matter of driving a stolen car, the instruction here is erroneous. It's our position that not only must the words have been heard but in slander of this nature that you also have to show the effect of the words on the people hearing them, not only that they would reasonably understand them to mean the plaintiffs had

stolen the car. We do not feel the instruction is a correct statement of law." Counsel for defendant states that the instruction seemingly originated in Conard v. Dillingham, 23 Ariz. 596, 206 P. 166, wherein it was stated that publication was not referred to because it was not an issue having been admitted in the pleadings. In the instant case it was not an issue. The objection to the instructions states "that not only must the words have been heard but" and then goes ahead and emphasizes that the jury should have been instructed as to the effect the words had on the people. His objection goes to the sufficiency of the instruction on the effect of the words on other people. The testimony that there was publication was uncontradicted. Arnold Carlson of the police department, in answer to the question as to whether Collins told him that Mr. and Mrs. Dilcher stole this automobile from him, stated that he did not remember the exact statements at the scene but that he did recall they told him it was stolen. However, he was also asked:

"Q Did you believe, sir, from what Mr. Collins had told you or indicated that Mr. and Mrs. Dilcher had stolen the automobile from Mr. Collins?

\* \* \* \* \* \*

"A Yes."

He also testified that they were listed as suspects, that they were "screened"; that is, they were checked out through the identification bureau to see whether they were wanted. When asked the question as to whether he suspected Mr. and Mrs. Dilcher of being criminals, he answered that they were listed as suspects of a car theft, that this was the result of Jack Collins's report of the incident, that when he received such a report on the radio it goes out to all cars on the frequency used, that approximately thirty cars get the message, also that any car tuned in on the frequency can hear the message.

Samuel Dean Perry testified that he was at the Read Mullan shop and also as to what occurred, as follows:

"QUESTION: Did Mr. Collins tell the police the Dilchers were driving a stolen car?

"ANSWER: Right.

"QUESTION: What?

"ANSWER: I heard him say that."

William H. Strain, who was employed by Collins, testified that Mrs. Dilcher told Collins that they had paid for the automobile, also that Collins told him to report to the police that Mr. and Mrs. Dilcher had stolen the automobile.

So the question of publication was not an issue. It was unquestionably proven that this report was made to the police and that their names went on the books as suspects. However, the objection was that the instruction did not have the requirement of the plaintiffs "to show the effect of the words on the people hearing them." However, this point was covered by the instruction, as the instruction states, "if you also further find that those who heard the words spoken would reasonably understand them to mean that the plaintiffs, or either of them, had stolen the car." Also that in finding the damages they take into consideration "loss of reputation, shame, mortification, injuries to the feelings and mental suffering produced, if any, by the uttering of the slanderous words, \* \* \*."

As to the objections made by counsel for defendants, we hold that the instruction given on slander did not constitute error.

The defendants also contend that the trial court erred in admitting in evidence certain testimony of one Dr. Levin. This issue arose in the following way: After the scuffle between Collins and Mrs. Dilcher at Read Mullan's garage, she filed criminal charges against him for assault and battery. A preliminary hearing was held before a justice of the peace at which time the State called as a witness Dr. Levin, a resident physician at Memorial Hospital, who attended Mrs. Dilcher when she was brought there by the ambulance. He then testified as to her injuries and gener-

al physical condition. Three years intervened between the preliminary hearing and the trial of the instant case. At the latter trial, in order to prove that Mrs. Dilcher was injured by Collins's assault, her counsel offered the hospital record in evidence and advised that Dr. Levin examined her immediately after the accident. This record was shown to be in Dr. Levin's handwriting and to have been made on the date of Mrs. Dilcher's arrival at the hospital. It appeared that the records were part of the hospital's medical file on Mrs. Dilcher. The trial judge held that the record was hearsay and refused to admit it, even though Rule 44(q), Rules of Civil Procedure, 16 A.R.S., was called to his attention. In order, therefore, to prove Mrs. Dilcher's injuries without the hospital record, her counsel read into evidence the transcript of Dr. Levin's testimony at the earlier preliminary hearing. Defense counsel's objection, citing Rule 43(e), Rules of Civil Procedure, 16 A.R.S., was overruled.

Rule 43(e) provides as follows:

"Absence of witness; transcript of testimony. Whenever in a court of record the testimony of a witness in a civil action is reported by an official court reporter and certified by him to be correct, and thereafter the witness dies or is beyond the jurisdiction of the court in which the action is pending, and his absence is not procured by the party offering the evidence, either party may read in evidence the testimony of the witness in a subsequent trial or proceeding had in the same action, subject only to the same objection that might be made if the witness were testifying in open court."

Collins cites authorities to the effect that testimony from the criminal case is admissible in a civil case if it meets the test of motive and interest and cross-examination being the same. However, we need not go further than Rule 43(e) itself because the justice court is not a court of record and the hearing in that court was not a civil

case. While plaintiffs have advanced some sound reasons and some good authority to show why other jurisdictions have followed a different rule, nevertheless Rule 43(e) is clear, unequivocal and applicable to the instant case, and our trial courts are not at liberty to ignore it.

■ Since the investigation officer examined Mrs. Dilcher at Read Mullan's before the ambulance removed her, and testified that he saw no injuries or bruises on her, the testimony of Dr. Levin was an important factor in the verdict on the assault and battery count, and the admission of the testimony was reversible error. The verdict and judgment for assault and battery, therefore, must be set aside.

Collins's last contention is that the damages awarded by the jury were excessive. Since we have already determined that the verdict for assault and battery cannot be upheld, we need examine this last contention only as it relates to the conversion and slander counts.

■ A conversion of the automobile was clearly proved. The damages for wrongful conversion of the car were the value of the automobile, repairs, lost articles and clothing, and eyeglasses, constituting the actual damages of $1,429.85. The punitive damages were in the sum of $8,000. For the slander, the jury gave $750 for actual damages and punitive damages in the sum of $4,000.

In Finney v. Lockhart, 35 Cal.2d 161, 217 P.2d 19, the court held:

"* * * There is no distinction when the review is of an award of exemplary rather than actual damages. [Citing cases.] These and other cases indicate that it is the province of the jury, and the trial court on the motion for a new trial, to say whether punitive damages should be awarded. The presumptions are in favor of the correctness of the verdict and judgment. After an award has been approved by the trial court the reviewing court will hesitate to declare the amount excessive unless upon consideration of the entire record including the

evidence it must be said that the award was the result of passion or prejudice. [Citing cases.]" 217 P.2d at p. 21.

In McNelis v. Bruce, 90 Ariz. 261, 367 P. 2d 625, in speaking of punitive damages, we held:

"* * * Such damages are for 'outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.' Restatement of the Law, Torts § 908, Comment b." 90 Ariz. at p. 269, 367 P.2d at p. 630.

In the instant case there is certainly sufficient evidence, if believed by the jury, to meet this test of punitive damages in the wrongful conversion count. Collins was told that the plaintiffs had bought the car and had paid Ellis for it. Collins disregarded this statement and took the car and sold it. The court in passing upon this question summarized the evidence as follows:

"THE COURT: This unfortunately calls for some comment which I am most hesitant on making, but I think I am obligated to make it in relation to the Court's reaction to the testimony of Defendant Collins.

"I think that based on the testimony of the defendant, Collins, in the patent inconsistencies of his testimony, that there is sufficient foundation for a claim of punitive damages.

* * * * * *

"THE COURT: I feel that the situation is such that the jury has tremendous latitude in relation to that portion of Collins' testimony which the jury wants to use, and that portion which the jury can reject as being inconsistent with other aspects of his testimony, so that—for example, many places he said, 'This is my car.' Other places he said, 'This is —no, this car belongs to Ellis,' and it was merely a loan. It is inconsistent to say that the car belonged to Ellis and yet later, 'I sold the car.' There are a number of things in relation to his testimony, and I would not comment on them ex-

cept I think I am called for—a comment is called for on the basis of the motion."

In a slander case it is likewise within the province of the jury to fix the amount of the damages. Arizona Publishing Co. v. Harris, 20 Ariz. 446, 181 P. 373. The statements of Collins have already been set forth. Dilcher and his wife were listed as suspects of car theft on the records of the police, they had been "screened" to see if they were wanted, and it was broadcast over the police radio that they were suspected of stealing a car which went out over the air to some thirty cars tuned in on the two frequencies and cars other than police cars tuned in on those frequencies could have picked it up.

Under these circumstances, the judgment in the assault and battery count is reversed and remanded for new trial; the judgments in the slander count and in the conversion count are affirmed.

STRUCKMEYER and HAYS, JJ., concur.