207 P.3d 654

**STRAWBERRY WATER COMPANY, an Arizona public service corporation, Plaintiff/Appellee,**

v.

**Randall D. PAULSEN and Virginia Paulsen, husband and wife, Defendants/Appellants.**

**No. 1 CA–CV 06–0442.**

Court of Appeals of Arizona, Division 1, Department C.

July 29, 2008.

Reconsideration Denied Oct. 23, 2008.

Review Denied April 20, 2009.\*

---

\* Vice Chief Justice Berch and Justice Hurwitz voted to grant review of Issue 3 of the Cross-Petition for Review.

Schneider & Onofry, P.C. By Jon D. Schneider, Luane Rosen, Phoenix, Attorneys for Defendants/Appellants.

Stewart & Bourque, P.C. By Arthur J. Bourque, Timea K. Vicsocsean, Phoenix and Carmichael & Powell, P.C. By Sid A. Horwitz, Phoenix, Attorneys for Plaintiff/Appellee.

## OPINION

PORTLEY, Judge.

¶ 1 Randall and Virginia Paulsen ("the Paulsens") challenge the jury's verdict awarding damages to Strawberry Water Company ("Strawberry") for conversion of water and utility tampering. Their appeal challenges a host of issues, but focuses on the trial court's determination that Strawberry had standing to sue; a determination that water can be converted; the failure to give the comparative fault jury instruction; and the trial court's decision to treble the jury damage award pursuant to Arizona Revised Statutes ("A.R.S.") section 40–493 (2001). For the following reasons, we affirm in part, reverse in part, and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Frank Parkinson ("Parkinson") owned a home with a pond and a water company in Strawberry, Arizona. He installed a pipe from his water company's line to supplement the pond.

¶ 3 He sold the water company to Williamson Water Company in 1971, and its ownership, at least in part, passed to United Utilities in 1981, Brooke Utilities in 1996, and Strawberry in 1998. After Parkinson died in 1982, the home and pond were sold to Frances and Mickey Karle ("the Karles") in 1991. The Karles sold the home and pond to the Paulsens in 1996. The Paulsens used the pipe to keep their pond full of water until 2000 when Strawberry discovered the pipe and stopped the flow of water to the pond.

¶ 4 Strawberry sued the Paulsens and the Karles for conversion, utility tampering, unjust enrichment, trespass, and negligence. Although Strawberry dismissed its claims against the Karles, Paulsen's cross-claim kept them in the case. Strawberry stipulated to dismiss the negligence claim against the Paulsens and voluntarily dismissed its trespass claim. Strawberry tried the remaining issues of conversion and utility tampering.[1]

¶ 5 After the close of Strawberry's case, the trial court denied the Paulsens' motion for judgment as a matter of law on damages. The jury found that the Paulsens had unlawfully diverted Strawberry's water and determined the damages were $146,925.21. The trial court then trebled the damages pursuant to A.R.S. § 40–493 and imposed sanctions under Arizona Rule of Civil Procedure 68. After the trial court denied the Paulsens' motion for a new trial, they appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

### I. Standing to Sue

¶ 6 The Paulsens contest Strawberry's standing to sue them. The trial court ultimately ruled that Strawberry was the real party in interest. *See* Ariz. R. Civ. P. 17(a).

¶ 7 Standing is a question of law that we review de novo. *Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180, ¶ 15, 91 P.3d 1019, 1023 (App. 2004). The question of standing in Arizona does not raise constitutional concerns because, unlike the United States Constitution, the Arizona Constitution contains no case or controversy requirement. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985). Instead, standing only raises "questions of prudential or judicial restraint." *Id.* A review for standing helps the courts avoid issuing advisory opinions, guards against mootness, and ensures the full development of the issues. *City of Tucson v. Pima Coun-*

---

1. The unjust enrichment claim was not resolved by pleading or trial. As a result, we do not address it.

*ty,* 199 Ariz. 509, 514, ¶ 11, 19 P.3d 650, 655 (App.2001).

■■■ ¶ 8 "A party has standing to sue in Arizona if, under all circumstances, the party possesses an interest in the outcome of the litigation." *Alliance Marana v. Groseclose,* 191 Ariz. 287, 289, 955 P.2d 43, 45 (App.1997). Standing generally requires an injury in fact, economic or otherwise, caused by the complained-of conduct, and resulting in a distinct and palpable injury giving the plaintiff a personal stake in the controversy's outcome. *Aegis of Ariz., L.L.C. v. Town of Marana,* 206 Ariz. 557, 562–63, ¶ 18, 81 P.3d 1016, 1021–22 (App.2003) (quotations and citations omitted). We interpret the law of standing in conjunction with Arizona Rule of Civil Procedure 17(a), the real party in interest rule. *See, e.g., Toy v. Katz,* 192 Ariz. 73, 87, 961 P.2d 1021, 1035 (App.1997) (discussing differences between the standing and real party in interest rules).

■■■ ¶ 9 The Paulsens argue that Strawberry provided insufficient evidence of an ownership interest in the water feeding the pond. Specifically, they contend that the evidence does not delineate the precise water rights transferred each time all or part of the water company was sold.[2]

■■■ ¶ 10 Ownership rights are irrelevant to standing in the utility tampering action. An *action for utility tampering* may be brought by a "utility," *see* A.R.S. § 40–492 (2001), which is defined as "any public service corporation ... engaged in the ... delivery of ... water service." A.R.S. § 40–491(5) (2001); *see also* Ariz. Const. art. 15, § 2 ("All corporations other than municipal engaged in ... furnishing water for irrigation, fire protection, or other public purposes ... shall be deemed public service corporations."). To establish standing in the utility tampering action, Strawberry need only show that it or its predecessors were providing the water service to the pipe from which the water was diverted. There is no requirement that Strawberry prove it owns the water it is providing. The Paulsens acknowledge that the water in question passed through Strawberry's water lines and that Strawberry was unilaterally able to cut off the water flow. Therefore, Strawberry, which was providing the water service, has standing to pursue the utility tampering claim.

■■■ ¶ 11 Ownership is vital, however, for standing in the conversion action. Conversion is "[a]n intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Focal Point, Inc. v. U–Haul Co.,* 155 Ariz. 318, 319, 746 P.2d 488, 489 (App. 1986) (quoting Restatement (Second) of Torts § 222(A)(1) (1965) (emphasis removed)). Evidence demonstrating that property was transferred from earlier water company sales is relevant for determining ownership.

■■■ ¶ 12 Water rights are real property interests, *Paloma Inv. Ltd. P'ship v. Jenkins,* 194 Ariz. 133, 138, ¶ 22, 978 P.2d 110, 115 (App.1998), and thus cannot be converted because they are not chattels, 1 Dan B. Dobbs, *The Law of Torts* § 63, at 130 (2001). Strawberry argues that the water in its pipes is its personal property and inventory, and therefore this case does not involve "true" water rights. We agree that this case does not directly involve water rights. Instead, it entails the rights surrounding groundwater pumped through a water utility system.[3] We must now distinguish groundwater rights

---

2. The Paulsens further contend that, under the best evidence rule, Strawberry must prove ownership using sales documents and ownership certificates. *See* Ariz. R. Evid. 1002. The best evidence rule states: "To prove the content of a writing ... the original writing ... is required, except as otherwise provided in these rules or by applicable statute or rule." *Id.* Because the issue is ownership of the water, Strawberry is not limited to sales documents and ownership certificates but may use any other admissible evidence to establish its rights to the water.

3. Water that was pumped from a groundwater source and then released on the surface could arguably be considered effluent as described in *Ariz. Pub. Serv. Co. v. Long,* 160 Ariz. 429, 435, 773 P.2d 988, 995 (1989), but the legislature has since changed the underlying definition of effluent, which is now limited to water collected for treatment in a regulated facility. *See* 1991 Ariz. Sess. Law, ch. 112, §§ 1–2 (narrowing the definition of effluent).

from rights to groundwater after it has been pumped.

 ¶ 13 A groundwater right is a usufructuary right, that is, a right to use, not own, the groundwater. *Town of Chino Valley v. City of Prescott,* 131 Ariz. 78, 82, 638 P.2d 1324, 1328 (1981); *see also Phelps Dodge Corp. v. Ariz. Dep't of Water Res.,* 211 Ariz. 146, 149 n. 2, ¶ 13, 118 P.3d 1110, 1113 n. 2 (App.2005) (noting that usufruct is the "right to utilize and enjoy the profits and advantages of something belonging to another so long as the property is not damaged or altered" (quotation omitted)).[4] The usufructuary right is one to pump groundwater and use the water; meanwhile, there is a separate personal property right to the water itself only when it is possessed and controlled. 1 *Waters and Water Rights: A Treatise on the Law of Waters and Allied Problems* § 53.2, at 349 (Robert Emmet Clark ed., 1967) (quoting Wiel, *Running Water,* 22 Harv. L.Rev. 190 (1909)); *see also Chino Valley,* 131 Ariz. at 82, 638 P.2d at 1328 ("[T]here is no right of ownership of groundwater in Arizona *prior to its capture and withdrawal* from the common supply . . . ." (emphasis added)). In *Chino Valley,* the Arizona Supreme Court reinforced the concept of a personal property interest in groundwater by analogizing it to wild animals, which can move freely as no one's property until "reduced to actual possession and control." 131 Ariz. at 82, 638 P.2d at 1328; *cf. Booth v. State,* 207 Ariz. 61, 65, ¶ 7, 83 P.3d 61, 65 (App.2004) (explaining that a landowner does not have a property interest in wild animals on the property until "reduced to actual possession and control"). Thus, while groundwater is "used" and possessed pursuant to a groundwater right, there is an absolute ownership of the water by the user until it is abandoned or control is otherwise lost.

4. The source of the water in question does not change the usufructuary nature of a water right. The Arizona Constitution upholds prior appropriation rights to the *use* of surface water. Ariz. Const. art. 17, § 2 (emphasis added). Surface water "belong[s] to the public" and is "subject to appropriation and beneficial *use.*" A.R.S. § 45–141(A) (2003) (emphasis added). Groundwater may be withdrawn and *used* to benefit overlying land. *See* A.R.S. §§ 45–451 (2003) and –453

¶ 14 Other jurisdictions similarly adopt the view that once water is reduced to possession and control within pipes,[5] it transforms into personal property. *See, e.g., Reynolds v. State,* 101 Ga.App. 715, 115 S.E.2d 214, 217 (1960) (holding that water in pipes may be the object of larceny); *Hagerman Irrigation Co. v. McMurry,* 16 N.M. 172, 113 P. 823, 825 (1911) ("Water once reduced to possession and control may be the subject of purchase and sale, or of larceny; and it makes no difference in that respect whether the captured fluid is held in a skin or cask, by an itinerant water vendor, or in the pipes of a modern aqueduct company."); *Clark v. State,* 14 Okla.Crim. 284, 170 P. 275, 275 (App.1917) (holding that water in pipes may be the object of larceny); *Vaughan v. Kolb,* 130 Or. 506, 280 P. 518, 520 (1929) (stating that confined water is personal property that may be abandoned); *Madison v. McNeal,* 171 Wash. 669, 19 P.2d 97, 98–99 (1933) (distinguishing an incorporeal water right from a corporeal right to the water itself and stating that water in pipes "takes the character of personal property"). One commentator elucidated the transformation:

> The water taken into an artificial structure and reduced to possession is private property during the period of possession. When possession of the actual water or corpus has been relinquished or lost by overflow or discharge, after use, property in it ceases; the water becomes again nobody's property and . . . "belongs to the public," just as it was before . . . . The specific water so discharged or escaped is abandoned; not an abandonment of a water right, but an abandonment of specific portions of water, viz., the very particles that are discharged or have escaped from control.

*Vaughan,* 280 P. at 520 (quoting 1 Wiel on Water Rights § 37 (3d ed.1911)). The con-

(2003); *see also Chino Valley,* 131 Ariz. at 82, 638 P.2d at 1328.

5. There is some debate over what amount of control is sufficient to transform water into personal property, but all of the authorities agree that possessing water within pipes is sufficient. *See* Clark, *supra,* at 349 n. 35.

trolled water is then moveable personal property, i.e., chattel, see Black's Law Dictionary 251 (8th ed.2004), and subject to conversion.

¶ 15 The Paulsens argue that the evidence Strawberry submitted to prove it owned the water does not show that it owned the pipe [6] or the water within it. Importantly, though, they do not deny that Strawberry owned the wells from which the water at issue was pumped.[7] Once the water was pumped, it remained Strawberry's property as long as it was still under Strawberry's control, as evidenced by Strawberry's ability to shut down the water supplying the Paulsens' pond. Reading the utility tampering statutes to correspond with the conversion action, we find that there is a rebuttable presumption that Strawberry owned the water if it was originally pumped from Strawberry's wells and the Paulsens received it by bypassing the meter. *See* A.R.S. § 40–494(2) (2001).

 ¶ 16 Moreover, the Paulsens' did not allege Strawberry abandoned any water it owned. " '[A]bandonment,' as applied to personal property ... means the act of voluntarily and intentionally relinquishing a known right...." *See Tissicino v. Peterson,* 211 Ariz. 416, 420, ¶ 12, 121 P.3d 1286, 1290 (App.2005) (quoting 1 Am.Jur.2d *Abandoned, Lost, and Unclaimed Property* § 3 (2005)). Abandonment of personal property must be

affirmatively proved, with clear and convincing evidence, by the party asserting it. 1 Am.Jur.2d *Abandoned, Lost, and Unclaimed Property* § 56 (2007).[8] There is no allegation of abandonment, and Strawberry, therefore, has standing to bring the conversion action.

## II. Summary Judgments on the Affirmative Defenses

 ¶ 17 The Paulsens next argue that the trial court erred in granting Strawberry summary judgment on the Paulsens' affirmative defenses of adverse possession, prescriptive easement, and easement by implication.[9] Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). We review the "evidence in the light most favorable to the party against whom judgment was entered, and determine *de novo* whether there are any genuine issues of material fact." *Unique Equip. Co. v. TRW Vehicle Safety Sys., Inc.,* 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999).

¶ 18 The Paulsens do not argue that they have adversely possessed groundwater rights.[10] Instead, their adverse possession claim is to "any groundwater that had flowed into their pond through Strawberry's pipes

---

6. The Paulsens do not clarify which pipe they are referencing.

7. Strawberry was not limited to using the water where it was pumped. Although Arizona's common law only allowed reasonable use of groundwater on the land from which it is pumped, *see Jarvis v. State Land Dep't,* 106 Ariz. 506, 508–09, 479 P.2d 169, 171–72 (1970); *Bristor v. Cheatham,* 75 Ariz. 227, 236, 255 P.2d 173, 178–79 (1953), the common law has been superseded by the Arizona Groundwater Management Act ("GMA").

 A landowner may withdraw groundwater subjacent to his land subject to restrictions imposed by the GMA and the Groundwater Code, A.R.S. §§ 45–401 to –704. Strawberry's service area falls outside of any Active Management Area, and thus the only restrictions applicable to its use of groundwater are that its use of groundwater be "reasonable," A.R.S. § 45–453, and that it only transport water it pumps within its groundwater sub-basin. A.R.S. § 45–544(A) (Supp.2007).

8. *Tissicino* posits the statute of limitations as a corollary to an abandonment argument. 211

Ariz. at 420, ¶ 12, 121 P.3d at 1290. We address the Paulsens' statute of limitations argument below.

9. Strawberry initially filed a motion for summary judgment addressing these issues on the Paulsens' *counterclaims* only. The trial court granted summary judgment for Strawberry on the adverse possession counterclaim. Subsequently, all documents in the record refer only to the counterclaims until the Paulsens dismissed their counterclaims. Strawberry then sought clarification that its motion applied to the Paulsens' affirmative defenses on the same issues. The Paulsens never objected to this recharacterization of the motion, and the trial court granted summary judgment on the affirmative defenses in favor of Strawberry.

10. The Paulsens implicitly agree with the trial court that they could not succeed on a claim to unpumped groundwater. *See Chino Valley,* 131 Ariz. at 82, 638 P.2d at 1328 ("[T]here is no right of ownership of groundwater in Arizona prior to its capture and withdrawal from the common supply....").

based upon a use that had been set up by the original owner of both the Paulsens' property and the water company." Similarly, their easement claims are to the pipe and a flow of water through it.

¶ 19 We have already established that this case entails water that has become personal property, not water rights.[11] Adverse possession applies only to real property interests. *See* A.R.S. § 12–521(A)(1) (2003). Similarly, "an easement is a right that one person has to use the land of another for a specific purpose." *Ammer v. Ariz. Water Co.*, 169 Ariz. 205, 208, 818 P.2d 190, 193 (App.1991) (citing *Etz v. Mamerow*, 72 Ariz. 228, 231, 233 P.2d 442, 444 (1951)). The Paulsens' affirmative defenses fail as a matter of law because they do not allege any right to a real property interest.

¶ 20 Moreover, the Paulsens' claimed easements would require Strawberry to continue pumping and delivering water to their pond, putting Strawberry in involuntary service to the Paulsens to maintain the easement. Easements typically only grant the easement owner access for the stated purpose of the easement; prohibit the servient estate owner from interfering, Restatement (Third) of Prop.: Servitudes § 1.2(1) (2000); and make the easement owner, not the servient estate owner, responsible for maintaining the easement. *Papa v. Flake*, 18 Ariz. App. 496, 498, 503 P.2d 972, 974 (1972); Restatement (Third) of Prop.: Servitudes § 4.13 (2000). Accordingly, the trial court correctly granted Strawberry summary judgment on the easement affirmative defenses.

### III. Jury Instructions

¶ 21 The Paulsens next argue that the trial court erred by refusing to instruct the jury on comparative fault, mitigation of damages, spoliation of evidence, and treble damages.[12] "We review a trial court's denial of a requested jury instruction for abuse of discretion," *State v. Rosas–Hernandez*, 202 Ariz. 212, 220, ¶ 31, 42 P.3d 1177, 1185 (App.2002), and consider the evidence in the light most favorable to the party requesting the instruction. *AMERCO v. Shoen*, 184 Ariz. 150, 156, 907 P.2d 536, 542 (App.1995).

¶ 22 The court must give a proposed jury instruction "if: (1) the evidence presented supports the instruction, (2) the instruction is proper under the law, and (3) the instruction pertains to an important issue, and the gist of the instruction is not given in any other instructions." *DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 10, 695 P.2d 255, 259 (1985); *see also AMERCO*, 184 Ariz. at 156, 907 P.2d at 542 ("A trial court must instruct the jury on all valid legal theories framed by the pleadings and supported by substantial evidence.").

### A. Comparative Fault

¶ 23 The Paulsens first argue that the trial court erred in denying their request for seven jury instructions related to the comparative fault of Strawberry, the Karles, Parkinson, Ernest Ralls II, and Ernest Ralls III.[13] In short, they argue that comparative fault requires the apportionment of fault among all intentional and negligent tortfeasors for utility tampering and conversion actions.

¶ 24 We disagree that the trial court erred by denying the comparative fault instruction directed towards Strawberry. Conversion and utility tampering, as alleged in this case,[14] are intentional acts. A.R.S. § 40–491(4)(d) (utility tampering); *Valder Law Of-*

---

**11.** The Paulsens' discussion of water rights as hereditaments and thus as real property interests is, therefore, inapplicable to this case.

**12.** The Paulsens briefly mentioned that they were not permitted to present a jury instruction on causation. They do not, however, discuss this issue any further, and we are not obliged to consider it.

The Paulsens preserved in their new trial motion any jury instruction whose consideration by this court would require us to review the sufficiency of the evidence in support of the instruc-

tion. *See Life Investors Ins. Co. of Am. v. Horizon Res. Bethany, Ltd.*, 182 Ariz. 529, 533, 898 P.2d 478, 482 (App.1995).

**13.** The Ralls assisted Parkinson in installing the pipe that fed the pond.

**14.** The verdict form limited "tampering" to whether the Paulsens knew or should have known "of an unlawful use or conversion of water." The jury found the Paulsens acted knowingly.

*fices v. Keenan Law Firm,* 212 Ariz. 244, 253 n. 13, ¶ 30, 129 P.3d 966, 975 n. 13 (App.2006) (conversion). We will not allow an intentional tortfeasor to compare his or her fault with the *victim's* conduct.[15] Doing so would condone a policy making a tortfeasor less liable for acts committed against a more vulnerable victim.

¶ 25 The Paulsens also argue that the comparative fault instruction is necessary to apportion the fault of the Karles and various nonparties.[16] Comparative fault applies to "action[s] for personal injury, property damage or wrongful death." A.R.S. § 12–2506(A). For purposes of the comparative fault statute, " 'property damage' means both physical damage to tangible property and economic loss proximately caused by a breach of duty." A.R.S. § 12–2501(G) (2003). Water that has transformed into personal property, as in the present case, is tangible property, and thus the comparative fault statute applies.

¶ 26 The "jury may apportion fault among defendants and nonparties, without distinguishing between intentional and negligent conduct or requiring that a minimum percentage of responsibility be assigned to the former." *Hutcherson v. City of Phoenix,* 192 Ariz. 51, 55, ¶ 20, 961 P.2d 449, 453 (1998). The jury should have received instructions related to the alleged fault of the

Karles and nonparties. The trial court, therefore, erred in denying the Paulsens' request for instructions related to the comparative fault of the Karles and the nonparties.

### B. Mitigation of Damages

¶ 27 The Paulsens argue that the evidence supported their mitigation of damages instruction because the jury could have found that Strawberry should have looked for a massive leak or conducted a mass balancing analysis. This argument, much like the attempt to hold Strawberry comparatively at fault, is unavailing.

¶ 28 The damages at issue are for a period preceding Strawberry's discovery that it was supplying water for the pond. The evidence the Paulsens rely on to support their instruction refers to Strawberry's diligence in discovering, not remedying, the damages. Mitigation of damages only applies once the plaintiff, knowing of the damage, fails to mitigate. *See Aetna Cas. & Sur. Co. v. Dini,* 169 Ariz. 555, 558, 821 P.2d 216, 219 (App.1991) (quoting Restatement (Second) of Torts § 918 (1979)). The plaintiff's knowledge must be of the "particular harm" intended by an intentional tortfeasor. *See* Restatement (Second) of Torts § 918(2). Knowing of water losses in general is not knowledge of the "particular harm" of inten-

---

**15.** *See Alabam Freight Lines v. Phoenix Bakery, Inc.,* 64 Ariz. 101, 112, 166 P.2d 816, 822–23 (1946), *overruled on other grounds by Anderson v. Morgan,* 73 Ariz. 344, 347, 241 P.2d 786, 788 (1952) ("[T]he defense of contributory negligence is not a defense in law to bar recovery for injuries inflicted by intentional or willful misconduct or wanton negligence."); *see also id.* at 111, 166 P.2d at 822 ("In an action to recover damages for an assault and battery it would be illogical and absurd to allow as a defense proof that the plaintiff did not use proper care to avert the blow."); A.R.S. § 12–2505(A) (2003) ("There is no right to comparative negligence in favor of any claimant who has intentionally, willfully or wantonly caused or contributed to the injury or wrongful death.").

**16.** Strawberry incorrectly argues that the Paulsens waived the potential fault of nonparties by not raising the issue in the joint pretrial statement. *See Englert v. Carondelet Health Network,* 199 Ariz. 21, 25, ¶ 7, 13 P.3d 763, 767 (App. 2000) (finding that a comparative fault defense not raised in either the disclosure statements or the joint pretrial statement should have been

precluded). In the joint pretrial statement, however, the Paulsens raised the issue of "mistake induced by the Plaintiff and/or its predecessors-in-interest," which presumably includes the Karles and their predecessors.

Furthermore, the comparative fault statute states that "[n]egligence or fault of a nonparty may be considered if the plaintiff entered into a settlement agreement with the nonparty or if the defending party gives notice before trial … that a nonparty was wholly or partially at fault." A.R.S. § 12–2506(B) (2003). The rule only allowing the comparison of nonparties' fault if they either have settled with the plaintiff or were disclosed by the defendant is intended to give the plaintiff notice of potential comparative fault claims. *See Englert,* 199 Ariz. at 25, ¶ 7, 13 P.3d at 767. The Karles answered the Paulsens' cross-claim and later signed a tolling agreement with Strawberry, though they were later dismissed. As a result, Strawberry had notice of the potential comparative fault claim against the Karles.

tional water theft. Additionally, Strawberry would not be required to mitigate damages if mitigation efforts required "substantial expense and effort," *see* Restatement (Second) of Torts § 918 cmt. e, and finding a single cause of water loss amid an entire water system is no small task.

¶ 29 Strawberry cannot be expected to have mitigated its damages before it discovered the pipe supplying the pond. *See Union Planters Bank, N.A. v. Cont'l Cas. Co.*, 478 F.3d 759, 765 (6th Cir.2007). Moreover, once it discovered the pipe, Strawberry then immediately cut off the water to the pond, completely mitigating all damages from then on. The trial court, therefore, correctly rejected this instruction as not supported by the evidence.

### C. Spoliation of Evidence

¶ 30 The Paulsens next contend that they should have been permitted to give the jury an adverse inference instruction based on the spoliation of evidence. Shortly after discovering the pipe feeding the Paulsens' pond, Strawberry cut out a two-foot piece of the pipe, conducted a five-minute flow test using an isolation valve and a flow meter, and later disposed of both the pipe and the meter. The Paulsens do not establish that they were prejudiced in any meaningful way by the loss of this evidence. Although they argue that they could not check the accuracy of Strawberry's flow test, they were able to voice this credibility concern to the jury through their own experts. Moreover, the remaining pipeline was still available for the Paulsens to conduct their own tests.[17] Therefore, the trial court did not abuse its discretion.

### IV. Preclusion of the Statute of Limitations Defense

¶ 31 The Paulsens argue that their statute of limitations defenses were inadvertently omitted from the joint pretrial statement and that the trial court erred in not permitting them to add them to the joint pretrial state-

ment. In light of our decision to remand this case for a new trial, we do not address this issue because the Paulsens will have another opportunity to amend the joint pretrial statement.

### V. Evidentiary Rulings

¶ 32 The Paulsens next contend that the trial court abused its discretion by admitting testimony of the water system's "interlinkage" and excluding photographs of the pond. The arguments related to this evidence are based on untimely disclosure. We do not address the evidentiary issues because the parties will have the opportunity to amend the joint pretrial statement and supplement their disclosure statements to include the evidence.

### VI. Constitutionality of § 40–493

¶ 33 The Paulsens argue that the utility tampering damages statute, A.R.S. § 40–493, is unconstitutionally vague. They raised the issue of constitutionality for the first time after trial. We have discretion to consider the constitutionality of a statute even if it was not previously raised. *State v. Anderson*, 199 Ariz. 187, 191, ¶ 14, 16 P.3d 214, 218 (App.2000); *State v. Ochoa*, 189 Ariz. 454, 459, 943 P.2d 814, 819 (App.1997). However, we decline to exercise our discretion at this time and do not address this issue.

### VII. Who Determines Whether to Impose § 40–493 Treble Damages

¶ 34 The Paulsens contend that the award of treble damages pursuant to § 40–493 should have been determined by the jury, not the judge. The determination of the issue is a legal question we review de novo. *See Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 5, 977 P.2d 776, 779 (1999).

¶ 35 The Legislature identified the damages that a utility can recover if there has been an illegal or unauthorized connection in violation of A.R.S. § 40–492. The

**17.** The Paulsens' reliance on *Souza v. Fred Carries Contracts, Inc.*, 191 Ariz. 247, 955 P.2d 3 (App.1997), is unhelpful. *Souza* discusses factors related to when a party's willful destruction of evidence makes dismissal an appropriate sanction. *Id.* at 249–52, 955 P.2d at 5–8. We do not find that case applicable here.

statute allows a utility to recover its actual damages. A.R.S. § 40–493. The statute also provides that "the utility *may* recover as damages three times the amount of actual damages." *Id.* (emphasis added). The statute's plain language makes it clear that treble damages are discretionary.

¶ 36 The Paulsens argue that the treble damages awarded are punitive in nature, and rely on *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 501, 733 P.2d 1073, 1084 (1987), for the proposition that punitive damages must be awarded by the fact finder, here the jury. *Hawkins* states that "[w]e vest the trier-of-fact with discretion to award an amount of punitive damages that, in its judgment, will punish the defendant and serve as an example to deter future similar misconduct." *Id.*; *see also Olson v. Walker,* 162 Ariz. 174, 179, 781 P.2d 1015, 1020 (App.1989).[18]

¶ 37 The Paulsens implicitly equate punitive damages with all damages that have a punitive element. We disagree. First, while treble damages provisions may have a punitive purpose, *see, e.g., Crum,* 190 Ariz. at 516, 950 P.2d at 175 (describing the wage-dispute treble damages statute as punitive), we have noted that there are other justifications for multiple damages, including compensating for losses and encouraging private enforcement of laws. *See DeJonghe v. E.F. Hutton & Co.,* 171 Ariz. 341, 345, 830 P.2d 862, 866 (App.1991); *but see Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986) (listing victim compensation and private law enforcement among rationales for punitive damages). Moreover, if we held treble damages to the same standards as punitive damages, treble damages would only be available when it is proven by clear and convincing evidence that the defendant acted with an "evil mind." *See Linthicum,* 150 Ariz. at 331–32, 723 P.2d at 680–81.

We have found no case which required clear and convincing evidence to support a statutory treble damage claim. We have also allowed treble damages in cases where the "evil mind" necessary for punitive damages was not present. For example, treble damages are frequently allowed in wage-dispute cases when the employer contests the action in bad faith. *See, e.g., Crum,* 190 Ariz. at 515, 950 P.2d at 174; *see also Linthicum,* 150 Ariz. at 332, 723 P.2d at 681 (distinguishing between bad faith and the more rigorous standard of acting with an "evil mind").

¶ 38 We refuse to apply punitive damages requirements to treble damages. The Paulsens do not give any other reason why they are entitled to have treble damages determined by the jury.

## VIII. Damages

¶ 39 The Paulsens challenge, under the guise of an evidentiary error, the measurement of "actual damages" with anything other than Strawberry's lost profits. Because the Paulsens do not discuss any specific evidentiary ruling on that issue, we address it separately at this time.[19]

¶ 40 The trial court held that "actual damages"[20] here was the "value of the water taken." The Paulsens argue that the actual damages are Strawberry's lost profits. We review de novo the trial court's interpretation of A.R.S. § 40–493. *See State v. Barnett,* 209 Ariz. 352, 354, ¶ 7, 101 P.3d 646, 648 (App. 2004).

¶ 41 Actual damages are damages for " 'loss or injury sustained [that] ... will put the injured party in the position in which he was before he was injured.' " *U.S. Fid. & Guar. Co. v. Davis,* 3 Ariz.App. 259, 263, 413 P.2d 590, 594 (1966) (quoting 25 C.J.S. *Damages* § 2 (1966)).

¶ 42 The Paulsens' main argument against using the value of the water taken

---

18. Strawberry cites *Crum v. Maricopa County,* 190 Ariz. 512, 514–15, 950 P.2d 171, 173–74 (App.1997), and *Swanson v. The Image Bank, Inc.,* 206 Ariz. 264, 268, ¶ 14, 77 P.3d 439, 443 (2003), to suggest that treble damages are left entirely to the judge's discretion. *Crum* and *Swanson* were, however, on review from summary judgment. *Swanson,* 206 Ariz. at 265, ¶ 1, 77 P.3d at 440; *Crum,* 190 Ariz. at 514, 950 P.2d at 173. Consequently, those cases do not delin-

eate whether judge or jury can resolve the issue of treble damages.

19. Because we remand for a new trial, we do not discuss the denied motion for judgment as a matter of law on damages.

20. Neither party asserts that actual damages for conversion and actual damages for utility tampering are different.

hinges on the difference between gross and net profits. While we agree that actual damages must offset for any reductions in Strawberry's expenses, the Paulsens offered no evidence that Strawberry's expenses were actually reduced. Strawberry still pumped the water and delivered it to them. Moreover, lost profits may be considered as *part* of actual damages, *see, e.g., Hamil Am. Inc. v. GFI*, 193 F.3d 92, 108 n. 7 (2d Cir.1999) (stating that actual damages in a copyright case include lost profits); *ALLTEL Info. Servs., Inc. v. FDIC*, 194 F.3d 1036, 1040 (9th Cir.1999) (noting that lost profits are "indisputably actual damages"), but are not the sole measure of actual damages. Consideration of only lost profits is particularly inappropriate in a utilities case because water companies are sometimes not-for-profit entities.[21]

¶ 43 The trial court analogized actual damages under § 40-493 to actual damages for conversion in *Collins v. Dilcher*, 104 Ariz. 221, 225, 450 P.2d 679, 683 (1969). In *Collins*, however, the Arizona Supreme Court merely affirmed that actual damages included the value of the items taken. *Id.* The court did not limit actual damages to the value of the stolen goods, *id.*, and nothing in *Collins* excludes other damages, such as incidental and consequential damages, under other facts. We thus find that the trial court erred by limiting "actual damages" to the value of the water taken. Here, actual damages might include, for example, the costs of finding and fixing the pipe and valve or for the electricity used to pump the water. The Paulsens could only be subject to greater damages if the award is vacated. Because Strawberry did not appeal the damages issue, we need not vacate the damages award.

## IX. Denial of the Motion for a New Trial

¶ 44 The Paulsens finally argue that the trial court should have granted their new trial motion. They refer to the issues discussed above in support.[22] Our holdings on those issues, therefore, suffice to address the denied new trial motion.

## X. Appellate Attorneys' Fees and Costs

¶ 45 Both parties request an award of attorneys' fees and costs on appeal pursuant to Arizona Rule of Civil Appellate Procedure 21, and Strawberry additionally seeks fees and costs pursuant to A.R.S. § 40-493. Because we remand for further proceedings, we decline both requests.

## CONCLUSION

¶ 46 For the foregoing reasons, we affirm the trial court's rulings in part, but we remand for a new trial so that the jury may be instructed on the comparative fault of nonparties.

CONCURRING: PATRICK IRVINE and DONN KESSLER, Judges.

---

21. We have noted, furthermore, that lost profits are particularly unsuitable when such profits are speculative, *U.S. Fid.*, 3 Ariz.App. at 262, 413 P.2d at 593, so the Paulsens' arguments that the jury was forced to speculate about the amount of damages suggest that lost profits may be less appropriate here.

22. The new trial motion also argued that (1) the evidence was insufficient to support the verdict and (2) the court erred by not granting the Paulsens judgment as a matter of law because Strawberry could not bring a conversion claim for property it did not own and because the evidence for the utility tampering claim was insufficient to send to the jury. We do not address the insufficiency issues because they were not raised on appeal.